GAUDIN, Judge.
An ambulance owned by the City of Ken-ner Fire Department and manned by two firemen answered an emergency call and rushed a stricken two-year-old child to East Jefferson General Hospital. The parents of the child later filed this suit, contending primarily that the ambulance attendants were negligent in not immediately administering oxygen.
The City responded with a motion for summary judgment on the grounds:
(1) The City was immune from tort liability if the cause of action arose from the rendering of emergency care; and
(2) There was no actionable negligence on the part of the firemen.
The trial judge ruled that the City was immune and granted the motion, and the child’s parents appealed to this Court.
We hold that the wording of LSA-R.S. 37:1732(B) does grant the City of Kenner immunity and we affirm the granting of the motion for summary judgment.
*1001 FACTS
Mrs. Millie Jones was babysitting for her grandson, Donald G. Jones, Jr., when the young boy either fell from a sofa and struck his head or else was unable to breathe properly because food or vomit became lodged in his throat, blocking air passage.
Regardless, the emergency call was made at 6:52 p.m. and the ambulance, with David Townsend and Michael Simms aboard, was dispatched to 2515 Short Street in Kenner.
Townsend was asked if he had any idea what type of emergency he and Simms were responding to.
He answered:
“No, I didn’t. I didn’t know if it would be a stabbing, a shooting, heart attack or what.”
The ambulance arrived on Short Street at 6:55 and Townsend and Simms found an unconscious child with a weak pulse. Mrs. Jones was hysterical; she was “screaming and hollering”, Townsend stated.
Townsend and Simms were in the residence for less than four minutes. They carried the child to the ambulance and by 6:59 they were en route to the hospital with oxygen being administered to the young boy. The ambulance arrived at East Jefferson Hospital at 7:05, where it was met by hospital personnel, including Dr. Andrew Rinker.
Dr. Rinker thought the child had “... a laryngeal spasm or a foreign body in the windpipe producing anoxia.”
Regrettably, the young boy never recovered and died approximately five (5) years after the accident.
In addition to Dr. Rinker, the child was treated by Dr. Evan Howell, a neurologist, who first saw the young boy six (6) days after he was admitted to the hospital. Dr. Howell said in his deposition that “... the child vomited and apparently aspirated on the contents of his stomach.”
Dr. Howell was asked if there was anything the emergency crew could have done to alter the course of events or to reverse what was in the process of occurring.
He answered:
“I doubt there’s anything they could do to significantly alter the outcome of the case.
“... to ask two firemen to come upon a scene like this ... is asking a bit too much for their degree of training and responsibility and technical know how.”
Dr. Howell was then asked what a trained medical crew could have done.
He said:
“I wonder if they could have altered things either. Then you’re talking about having to have all sorts of equipment to take care of a patient like this.”
IS KENNER IMMUNE?
The City bases its immunity contention on LSA-R.S. 37:1732, which reads:
IMMUNITY FROM LIABILITY FOR EMERGENCY MEDICAL ASSISTANCE OR FIRST AID
(A) Any fireman, policeman or member of an ambulance or rescue squad who holds a valid current certification by the American Red Cross, L.S.U. Fireman Training Rescue Program or United States Bureau of Mines, who renders emergency care, first aid or rescue while in the performance of his duties at the scene of an emergency, or moves a person receiving such care, first aid or rescue to a hospital or other place of medical care shall not be individually liable to such person for civil damages as a result of acts or omissions in rendering the emergency care, first aid, rescue or movement of such person receiving same to a hospital or other place of medical care except for acts or omissions intentionally designed to harm or grossly negligent acts or omissions which result in harm to such person, but nothing herein shall receive the driver of an ambulance or other emergency or rescue vehicle from liability arising from the operation or use of such vehicle.
*1002 (B) The immunity herein granted to a fireman, policeman or member of an ambulance or rescue squad in. accordance with Subsection (A) of this section shall be personal to him and shall not inure to the benefit of any employer or other person legally responsible for the acts or omissions of such fireman, policeman or member of an ambulance or rescue squad nor shall it inure to the benefit of any insurer, except that no parish governing authority engaged in rendering ambulance services nor its insurer with respect to such ambulance services shall be liable for the act or omission of any member of any ambulance squad employed by it unless such individual would be personally liable therefor under the provisions of Subsection (A) hereof.
(C) In order for any fireman, policeman or member of an ambulance or rescue squad to receive the benefit of the exemption from civil liability provided for herein, he must first have taken and successfully completed the standard first aid course recognized or approved by the American Red Cross or the United States Bureau of Mines or the L.S.U. Fireman Training Rescue Program and further he shall have a valid certification from the Red Cross or the United States Bureau of Mines or the L.S.U. Fireman Training Rescue Program that he has successfully completed any necessary training or refresher courses, or shall have successfully completed a first aid course having standards at least equal to the standard first aid course recognized or approved by the American Red Cross or the United States Bureau of Mines or the L.S.U. Fireman Training Rescue Program.
The record indicates that both Townsend and Simms have the statutorily required training and qualifications; therefore, neither could be individually liable.
Kenner argues that it, too, is immune. Section B states that “... no parish governing authority ... shall be liable ...” and the City contends that it is included in this wordage. We agree.
Although there are no reported cases directly on point, we are of the opinion that the clear legislative intent and the purpose of the statute was to relieve all governmental units engaged in rendering ambulance services from civil responsibility.
LSA-C.C. art. 18 states:
“The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.”
The only possibly dubious portion of Section B is the fact that the word “parish” is used, giving rise to appellant’s argument that only ambulances belonging to the actual 64 parishes are included and that ambulances owned by municipalities (such as Kenner) and lesser parochial agencies are excluded. Such an interpretation would be unreasonably restrictive.
From Waggoner v. Kellogg-Moore Oil Company, 375 So.2d 197 (La.App. 2nd Cir. 1979):
“Court has duty to apply statute as written unless such application would lead to absurd result in which case the court must interpret statute in such manner as to reach reasonable result consistent with legislative intent.”
See also Arceneaux v. Hawkins, 376 So.2d 362 (La.App. 3rd Cir.1979), which holds:
“Court’s objective in construing a statute is to ascertain legislative intent and interpret law as to give it meaning lawmakers obviously intended, and not to construe legislation so rigidly as to give it a preposterous or strange meaning; statutes must be given reasonable interpretation.”
Appellants, citing Board of Commissioners of the Port of New Orleans v. Splendour Shipping & Enterprises Company, 273 So.2d 19 (La.1973), believe that “... governmental responsibility is needed more today than ever. There is hardly any sector of private life and activity free from governmental intervention.”
We find no fault with this reasoning, but providing ambulance service for ill and *1003 needy citizens can hardly be called an intervention. In Splendour, the governmental activity complained of was the improper design and construction of a bridge, which allegedly constituted a hazard and obstruction to navigation on the Industrial Canal.
CONCLUSION
In explaining his ruling on the motion for summary judgment, the trial judge said:
“... I believe that it[1] should include City of Kenner as well. I don’t think it includes only the unincorporated areas of the Parish of Jefferson.”
The district judge obviously based his decree on the applicability of LSA-R.S. 37:1732. He did not comment on the validity of the City’s second argument — i.e., that there wasn’t any actionable negligence— but the record would support this contention as well. There are no material issues of contested fact and the procedure followed by Townsend and Simms, from start to finish, shows no impropriety of any kind.
For these reasons, we affirm the granting of the motion for summary judgment which dismissed the City of Kenner from this proceeding.
AFFIRMED.

. LSA-R.S. 37:1732