442 So.2d 1242 (1983)
Donald G. JONES and Gloria Jones, Individually and as the Natural Tutors of Their Minor Son, Donald G. Jones, Jr.
v.
CITY OF KENNER; City of Kenner Fire Department Emergency Ambulance, and the CNA Insurance Company.
No. 5-305.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1983.
Jerome M. Volk, Jr., Kenner, for plaintiffs-appellants.
Francis G. Weller, Deutsch, Kerrigan & Stiles, New Orleans, for defendants-appellees.
Before BOUTALL, BOWES and GAUDIN, JJ.
GAUDIN, Judge.
This case emanated from the 24th Judicial District Court, where a motion for summary judgment filed by the City of Kenner was granted, dismissing the City from this litigation. We affirmed at 435 So.2d 1000, holding, as did the trial judge, that LSA-R.S. *1243 37:1732(B) granted statutory immunity to the City of Kenner.
The Supreme Court of Louisiana, 435 So.2d 992, finding LSA-R.S. 37:1732(B) inapplicable, remanded to this Court for further consideration of the City of Kenner's motion for summary judgment. The City's motion was based on (1) immunity and (2) the contention that there were no genuine issues of material fact.
Petitioners in this action are the parents of Donald G. Jones, Jr., a child who fell from a sofa and was unable to breathe properly because of the fall or because food or vomit was lodged in his throat, blocking air passage. An ambulance manned by two firemen immediately answered the emergency call and rushed the young boy to East Jefferson Hospital.
Regrettably, the child never recovered, requiring almost total nursing care until he died five years later. He was two years of age when this incident occurred.
In the petition, Mr. and Mrs. Jones state in paragraph XI that "... the injuries received were caused by acts of negligence, the specific nature of which are unknown..." Paragraphs XII and XIII then itemize 20 acts or omissions in an attempt to show negligence on the part of the firemen or a breach of a duty of care owed to petitioners.
While the City of Kenner is a named defendant, the firemen, David Townsend and Michael Simms, were not individually named as they had completed an American Red Cross first aid course[1] and were thus statutorily protected.[2]
In our prior decree, at page 1003, we noted that:
"The district judge obviously based his decree on the applicability of LSA-R.S. 37:1732. He did not comment on the validity of the City's second argument i.e., that there wasn't any actionable negligencebut the record would support this contention as well. There are no material issues of contested fact and the procedure followed by Townsend and Simms, from start to finish, shows no impropriety of any kind."
Considering the petition's allegations along with the depositions and affidavits in evidence, we remain of the opinion that there are no genuine issues of material fact and that the City is entitled to a summary judgment as a matter of law, in accord with LSA-C.C.Pr. art. 966. The record is devoid of any medical statement or evidence placing blame on either the firemen or the City.

FACTS
The emergency call was made at 6:52 p.m. and the ambulance, with Townsend and Simms aboard, arrived at 2515 Short Street in Kenner at 6:55. Although Townsend and Simms had completed the American Red Cross course and Townsend had completed a course in emergency treatment, neither had any advanced medical training.
The firemen were met by Mrs. Millie Jones, the child's grandmother, who was hysterical. The young boy was unconscious and had only a weak pulse. The firemen were in the residence for less than four minutes, during which time Townsend checked Donald's eyes with a small light and inserted his fingers into the boy's throat, feeling for an obstruction.
Finding no obstruction and recognizing the seriousness of the child's condition, Townsend carried Donald to the ambulance and by 6:59 they were en route to the hospital.
Townsend said:
"I set up the resuscitator and we put the oxygen on him, as soon as we got him in the ambulance."
The ambulance arrived at East Jefferson Hospital at 7:05, where it was met by hospital personnel. Donald was taken to the *1244 emergency room, where a tube was inserted in his throat to assist breathing.
Dr. Andrew Rinker, the pediatrician who examined Donald in the emergency room, testified that he thought the young boy had "... a laryngeal spasm or a foreign body in the windpipe producing anoxia."
The medical testimony, by way of various depositions and an affidavit in evidence, varied with regard to the exact cause of the young boy's illness. Dr. Evan P. Howell, one of the treating physicians, said the child may have had (1) an epileptic seizure, (2) fallen and "torn blood vessels within the skull" or (3) choked on food. Dr. John D. Jackson, a neurologist, said that the young boy may have experienced a seizure, but he wasn't certain.
Dr. Rinker said that the child's condition "... was precipitated either by laryngeal spasm or foreign body in his windpipe and I think he had had such an insult to his brain that I do not think he had an underlying epilepsy and I do not think that he had a seizure prior to whatever was the incident. And I think that he was decerebrate and neurologically defunct on arrival at the hospital."
Dr. Judith A. Harris, a pediatrician, stated in her affidavit that the child suffered from "... decreased oxygen reaching the blood in the lungs."
Although the doctors did have different ideas concerning the cause of the young boy's medical problems, not one of them suggested that the ambulance was not adequately equipped or that the fireman did anything wrong or neglected to do something they should have done.
The following excerpt is from Dr. Howell's deposition:
Q. "... From what you know about this case, is there anything that the emergency crew could have done to alter the course of events with respect to the condition of this child or to reverse what was in the process of occurring?
A. I doubt that there's anything they could do to significantly alter the outcome of the case.
Q. Why is that, doctor? Why do you have that opinion?
A. Well, one of the first things you have to do with medical care treatment is to very firmly establish a diagnosis and this involves getting a very good history and then examining the patient and instituting care. Now, sometimes this can be done quite rapidly but I think that in this particular case where nobody really seems to know exactly what has happened and apparently a great number of experts have looked at this and tried to figure out exactly what happened, to ask two firemen to come upon a scene and significantly alter the outcome of a case like this I think is asking a bit too much for their degree of training and responsibility and technical know how.
Q. What could a trained medical crew have done?
A. I wonder if they could have altered things either. Then you're talking about having to have all sorts of equipment to take care of a patient like this.
Q. For example, what type of equipment?
A. Well, I think you have to have a laryngoscope. That is an instrument that would be used to push the tongue out of the way and look at the opening for the airways. That's just one thing. I think you have to have suction. I think you have to have bicarbonate. I think you have to have steroids which is drugs which would suppress inflammatory responses. You might even have to have a respirator on hand.
Q. Do you think any of that equipment would have altered the course of events in this case?

*1245 A. Even with all that, it's possible that you may not have altered events either."

OPPOSITION TO MOTION
In opposition to the City's motion for summary judgment, plaintiffs submitted Dr. Harris' affidavit and an affidavit executed by Mrs. Ernest Clark. Mrs. Clark, who lived next door to where the Jones child became ill, said that oxygen was not administered in the house and that the ambulance driver told her the day following the incident "... that the oxygen equipment on the ambulance was broken ...", thereby implying that oxygen could not have been administered to Donald on the way to the hospital as Townsend said it was.
At first glance, such assertions would seem to create enough of a contest to defeat summary judgment, as the law does favor trial of contested issues. However, Mrs. Clark was not in the ambulance when it left the Short Street residence. Mrs. Jones, who did ride in the ambulance, did not say that oxygen was not administered or that the oxygen equipment was defective.
Of more importance with regard to the City's motion for summary judgment is the clear reality that there is no medical indication that the administration of oxygen at the residence or the ambulance would have made any difference or that anything the firemen did or did not do contributed to Donald's plight. Dr. Howell stated that medical personnel would have "... to have all sorts of equipment to take care of a patient like this ..." and Dr. Jackson said that the young boy was not suffering from anything related to the failure of administering oxygen.
From Dr. Rinker's deposition:
Q. "Doctor, let's assume that this boy did have what you say was a laryngeal spasm which induced this cerebral anoxia, at what point would the administration of oxygen to this boy following the laryngeal spasm, how soon thereafter would the administration of oxygen have been effective in preventing his present condition?
A. If he had laryngeal blockage, whether it be spasm or foreign body that we are discussing, the administration of oxygen to him would have been of no value at all. The oxygen has to go the rest of the way down the trachea into the alveolar sacs before it's available for transport to the brain so whether he was administered oxygen or not would have had no effect unless he had an open airway. And that's the first thing that they teach the medical people, they have to have an open airway.
Q. And in order to open that airway, is that a sophisticated procedure to open that airway?
A. For a laryngeal spasm it's very sophisticated to get oxygen or open it up because in this office I cannot see a larynx. It requires anesthesia and a laryngoscope and it can be done in tiny infants and people that are gone all the way, but you need a laryngoscope to see a larynx because the larynx is four centimeters, five centimeters down.
Q. It's not simply a matter of somebody sticking an index finger down your throat and clearing it?
A. That's correct."

CONCLUSION
To determine whether there is a genuine issue of material fact, a trial court must of necessity examine the merits. Despite the presence of disputed facts, summary judgment will be granted as a matter of law if the contested issues of fact are so patently insubstantial as to present no genuine issues. Allegations without substance will not preclude summary judgment. See Metropolitan Bank of Jefferson v. Summers, 257 So.2d 179 (La.App. 4th Cir.1972), writ refused at 261 La. 462, 259 So.2d 914 (1972); City of Baton Rouge v. Cannon, 376 So.2d 994 (La.App. 1st Cir.1979); and *1246 Aydell v. Charles Carter & Company, 388 So.2d 404 (La.App. 1st Cir.1980), writ refused at 391 So.2d 460 (La.1980).
When documents in support of a motion for summary judgment are sufficient to resolve all genuine issues of material fact, the sufficiency shifts the burden to the other party to present evidence showing that a material fact is still at issue. Jones v. American Bank and Trust Company, 387 So.2d 1360 (La.App. 1st Cir.1980).
Here, the City of Kenner's documents resolve all genuine issues of material fact and shift the burden of proof. The City showed (1) that the firemen responded quickly to the emergency call; (2) that the firemen, at the accident scene, did what they were trained to do and quickly ascertained that the problem was serious and that a physician and sophisticated equipment were needed; (3) that the firemen quickly transported the child to the hospital; and (4) that nothing the firemen did or did not do at the residence or in the ambulance would have averted or changed the course of the young boy's medical condition. What Townsend and Simms did was in line with their limited medical training and experience and was all that could be reasonably and legally expected of them.
In rebuttal, petitioners rely on their pleadings and the affidavits of Dr. Harris and Mrs. Clark. These, however, do not demonstrate that any material fact remains at issue.
Considering the facts presented and the record as a whole, we conclude that the City of Kenner is entitled to the relief it seeks. We therefore affirm the district judge's granting of the City's motion for summary judgment.
AFFIRMED.
NOTES
[1] According to the affidavit executed by D.J. Mumphrey, Chief of the City of Kenner Fire Department.
[2] See LSA-R.S. 37:1732(A).