525 So.2d 1108 (1988)
GENERAL MOTORS ACCEPTANCE CORPORATION
v.
Russell S. GILL.
No. 87-CA-743.
Court of Appeal of Louisiana, Fifth Circuit.
April 18, 1988.
Rehearing Denied May 17, 1988.
Hugh G. Oliver, Westwego, for defendant-appellant.
*1109 Bruce M. Danner, Philip S. Brooks, Metairie, for third-party defendant-appellee.
Before KLIEBERT, GRISBAUM and DUFRESNE, JJ.
GRISBAUM, Judge.
The original defendant, Mr. Russell S. Gill, appeals the summary judgment, which was granted in favor of a third-party defendant, Insurance Premium Assistance Company (I.P.A.C.), the company through which he financed payment for certain automobile insurance. We affirm.
ISSUE
Whether the pleadings and supporting documents demonstrate there was a genuine issue of material fact and whether the third-party defendant was entitled to judgment as a matter of law.
FACTS
The record facts show that on August 14, 1986, General Motors Acceptance Corporation filed suit against the defendant-appellant, Mr. Gill, for failure to make installment payments on a note given in payment for a 1984 Buick Regal. By virtue of a March 30, 1986 accident, the vehicle had been rendered a total loss. The defendant third-partied various insurance companies/underwriters, along with the insurance agency with which he had dealt. Also made a third-party defendant was I.P.A.C., the insurance premium finance company through whom the defendant had financed the payment of his insurance premiums.
Procedurally, the defendant, in joining I.P.A.C. as a third-party defendant, alleged that, "Insurance Premium Assistance Company is responsible [for payment of all claims by General Motors Acceptance Corporation] because they negligently failed to forward premiums to the insurance company; Gill denies that the insurance company ever cancelled the policy." The appellant further pleads: "Alternatively, and only in the alternative, Insurance Premium Assistance Company was the agent of Prestige Casualty Insurance Company and is responsible separately, severally and in solido with them for payment of the claim of General Motors Acceptance Corporation...."
I.P.A.C., in its pleadings, responded, "Insurance Premium Assistance Company was not the agent of Prestige Casualty Insurance Company." Moreover, "At all times pertinent hereto, Insurance Premium Assistance Company had paid in full the premiums due to Prestige Casualty Insurance Company, and accepted and negotiated those checks after cancellation of the subject policy in payment of the loan made by Insurance Premium Assistance Company to Russell S. Gill" (emphasis added). After answering, I.P.A.C. on June 23, 1986 filed a motion for summary judgment, supporting it with a memorandum and an affidavit, by Belinda Keasling, office manager of I.P. A.C., outlining the chronological history of I.P.A.C.'s transactions with Mr. Gill concerning his insurance premiums. We note that a notice of intent to cancel was forwarded by I.P.A.C. to Gill, notifying him that his policy would be cancelled if no payment were received within ten days. A second affidavit by Ms. Keasling attests that this notice was mailed November 12, 1985 and the notice itself indicates that the policy was to be cancelled on November 22, 1985. Additionally, we see that I.P.A.C. mailed notice to Gill that the policy had been cancelled, this letter stating,
DUE TO YOUR DEFAULT UNDER THE TERMS OF THE I.P.A.C. CONTRACT, YOUR INSURANCE POLICY HAS BEEN TERMINATED.
I.P.A.C. WILL RECEIVE ALL UNEARNED PREMIUMS AND COMMISSIONS AND WILL CREDIT YOUR ACCOUNT. IF, AFTER ALL MONIES HAVE BEEN APPLIED TO YOUR ACCOUNT A REFUND IS DUE, I.P.A.C. WILL REFUND THE SURPLUS TO YOU.
This "Termination of Insurance" notification by I.P.A.C. also advised Gill of the cancellation date: November 26, 1985.
LAW
The mechanism of summary judgment in civil proceedings is provided for by La.C.C. P. art. 966, which states:
A. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for *1110 all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
B. The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
The jurisprudence interpreting this provision makes clear that summary judgment should be granted only when reasonable minds must conclude that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979). A decision on the motion necessarily involves an examination of the merits of the case as they appear through the pleadings and supporting documents submitted on trial of the motion.[1]Jones v. City of Kenner, 442 So.2d 1242, 1245 (La. App. 5th Cir.1983). In accord with the provisions of La.C.C.P. art. 967, the burden of proof functions as follows:
the court must first determine whether the supporting documents presented by the moving party are sufficient to resolve all material fact issues. If they are not sufficient, summary judgment must be denied. Only if they are sufficient does the burden shift to the opposing party to present evidence showing that material facts are still at issue; only at this point may he no longer rest on the allegations and denials contained in his pleadings.
Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980); see also Jones at 1246.
As should be obvious from the rationale of summary judgment principles, any decision as to the propriety of a grant of the motion must be made with reference to the substantive law applicable to the case. Only in the context of the applicable substantive law can issues of material fact be ascertained.
ANALYSIS
Initially, the appellant-original defendant claims that I.P.A.C. negligently failed to forward insurance premiums to the insurance company and further claims that the insurance company never cancelled the policy. We find it is undisputed that there was a premium finance agreement between Mr. Gill and I.P.A.C. wherein I.P.A.C. financed *1111 the insurance premiums due to A & R Capital Underwriters.
We note that La. R.S. 9:3550[2] sets forth the procedures an insurance premium finance company must follow to validly cancel an insurance policy. This statute requires ten days' notice of cancellation from the premium finance company to the insured in the event the company elects to exercise its power of attorney to cancel the *1112 *1113 insurance policy upon default under a premium finance agreement.
As noted, I.P.A.C. has submitted two affidavits in support of its motion. On the matters attested to, the affidavits shift the burden of proof under La.C.C.P. art. 967 to Mr. Gill to rebut the evidence received. No counteraffidavits or other receivable evidence having been filed, we must accept as conclusive I.P.A.C.'s proof on the covered points. It thus appears that I.P.A.C. paid on behalf of Mr. Gill all insurance premiums due A & R Capital Underwriters. Only upon Mr. Gill's default in payments to I.P.A.C. did the latter move to cancel the paid-up policy. It being proved, for the purpose of this motion, that the premiums were paid and that I.P.A.C. mailed to Mr. Gill the notices required to perfect cancellation of the policy, no issue of material fact remains to render summary judgment in I.P.A.C.'s favor improper insofar as a failure to forward premiums.
The appellant also contends that I.P.A.C. should not be granted summary judgment because I.P.A.C. was the agent of Prestige Casualty Insurance Company and, as its agent, is responsible separately, severally, and in solido with Prestige for payment of the claim of General Motors Acceptance Corporation against Gill. The record shows that the appellant, in its pleadings, states that I.P.A.C. had an agency relationship with Prestige Casualty Insurance Company; however, I.P.A.C. in response, states that it had no such agency relationship. I.P.A.C.'s affidavit denies that I.P.A.C. acted as the agent of Prestige. The record reveals merely that I.P. A.C. had a contractual relationship with Mr. Gill in that Gill arranged for his premiums to be paid in accordance with an insurance premium contract. And, as the appellee points out in brief,
It is important to note that Appellant's premium had been paid in full and that his policy of insurance was not cancelled for reason of nonpayment of premium, but was requested cancelled by Appellee for reason that he failed to pay his indebtedness to Appellee. Appellee does not "stand in the shoes" of the insurer.
Even assuming an I.P.A.C.insurer agency relationship did exist, however, we can detect no basis for holding I.P.A.C. liable by virtue of such agency, nor is any basis alleged. I.P.A.C., in its brief, contends that the appellant raises a false issue in asserting its agency with the insurer, for either the policy remains effective and the insurer bears full responsibility or cancellation was effective and no one is liable. We agree. Accordingly, even assuming a viable issue as to agency remains, any such issue, however genuine, is nongermane to any material fact raised by the pleadings. See Toups v. Hawkins, 518 So.2d 1077 at 1080 (La.App. 5th Cir., 1987). Consequently, we see no issue of material fact and further find that I.P.A.C. is entitled to judgment as a matter of law.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.
NOTES
[1] La.C.C.P. art. 967 provides for the submission of such documentation and delineates the burden of proof thereof as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
If it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
If it appears to the satisfaction of the court at any time that any of the affidavits presented pursuant to this article are presented in bad faith or solely for the purposes of delay, the court immediately shall order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees. Any offending party or attorney may be adjudged guilty of contempt.
[2] La.R.S. 9:3550 (as of April 3, 1985, the date of the premium finance agreement) provided as follows:

§ 3550. Insurance premium finance companies
A. This Section shall apply to any person engaged in the business of financing insurance premiums, entering into premium finance agreements or otherwise acquiring premium finance agreements.
B. For the purposes of this Section:
(1) "Insurance premium finance company" means a person engaged in the business of entering into premium finance agreements;
(2) "Premium finance agreement" means an agreement by which an insured or prospective insured promises to pay to an insurance premium finance company the amount advanced or to be advanced under the agreement to an insurer or to an insurance agent or broker in payment of premiums on an insurance contract together with a service charge as authorized and limited by this Section;
(3) "License" means an insurance premium finance company holding a license issued under this Section;
(4) "Person" includes an individual, partnership, association, business corporation, nonprofit corporation, common law trust, joint-stock company or any other group of individuals however organized.
C. No person shall engage in the business of financing insurance premiums in this state without first having obtained a license as an insurance premium finance company from the commissioner except as provided in Subsection (A) hereof. The annual license fee shall be in accordance with R.S. 9:3564(D).
D. Premium finance agreements shall:
(1) Be dated, signed by or on behalf of the insured, and the printed portion thereof shall be in at least 8-point type;
(2) Contain the name and place of business of the insurance agent negotiating the related insurance contract, the name and residence of the place of business of the insured as specified by him, the name and place of business of the insurance premium finance company to which payments are to be made, a brief description of the insurance contracts involved and the amount of the premium therefor; and
(3) Set forth the following items where applicable;
(a) The total amount of the premium,
(b) The amount of the down payment,
(c) The principal balance, being the difference between Subparagraphs (a) and (b),
(d) The annual percentage rate and the dollar amount of the total charges (including any additional charge),
(e) The balance payable by the insured (sum of Subparagraphs (c) and (d)), and
(f) The number of installments required, the amount of each installment expressed in dollars and the due date or period thereof.
(4) The items set out in Paragraph (D)(3) need not be stated in the sequence or order in which they appear in such Paragraph and additional items may be included to explain the computations made in determining the amount to be paid by the insured.
E. An insurance premium finance company shall not charge, contract for, receive, or collect a credit service charge other than as follows:
(1) The credit service charge is to be computed on the balance of the premium due, after subtracting the down payment made by the insured in accordance with the premium finance agreement, from the effective date of the insurance coverage for which the premiums are being advanced to and including the date when the final installment of the premium finance agreement is payable.
(2) The credit service charge shall not exceed the charges permitted under R.S. 9:3519, plus an additional charge of ten dollars per premium finance agreement which need not be refunded on cancellation or prepayment. The credit service charge permitted by this Subsection anticipates repayment in consecutive monthly installments equal in amount for a period of one year. For repayment in greater or lesser periods or in unequal, irregular or other than monthly installments, the credit service charge may be computed at an equivalent effective rate having due regard for the installments as scheduled.
(3) Notwithstanding the provisions of any premium finance agreement, any insured may prepay the obligation in full at any time. In such an event he shall receive a refund credit. The amount of such refund credit shall represent at lesser as great a proportion of the credit service charge as the sum of the periodic balances after the month in which prepayment is made bears to the sum of all periodic balances under the schedule of installments in the agreement. Where the amount of the refund credit is less than one dollar, no refund need be made.
F. A premium finance agreement may provide for the payment by the insured of the delinquency charge in accordance with R.S. 9:3525. If the default results in the cancellation of any insurance contract listed in the agreement, the agreement may provide for the payment by the insured of a cancellation charge not to exceed twenty-five dollars.
G. Insurance contracts may be cancelled upon default as follows:
(1) When a premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the insurance premium finance company unless such cancellation is effectuated in accordance with this Subsection.
(2) Upon default of insurance premium contract by the debtor, the premium finance company may mail a notice of cancellation to the insured, at his last known address as shown on the records of the insurance premium finance company. A copy of the notice of cancellation of the insurance contract shall also be mailed to the insurance agent negotiating the related insurance contract whose name and place of business appears on the premium finance agreement. Such notice of cancellation shall show the name of any governmental agency, mortgagee or third party also requiring notice of cancellation as shown on the insurance premium finance contract.
(3) Ten days after notice of cancellation has been mailed to the insured, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract or contracts by mailing to the insurer a copy of the notice of cancellation together with a statement certifying that:
(a) The premium finance agreement contains a valid power of attorney as provided in paragraph (1) above;
(b) The premium finance agreement is in default and the default has not been timely cured;
(c) Upon default, a notice of cancellation was mailed to the insured as provided in paragraph (2) above, specifying the date of mailing by the premium finance company to the insured; and
(d) Copies of the notice of cancellation were mailed to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, mortgagees or third parties to whom the insurance premium finance company has sent notice of cancellation.
Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall be entitled to consider that cancellation of the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:637. The effective date of cancellation shall be as of 12:01 A.M. on the tenth day after the date of mailing of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company.
The receipt of such notice and statement by the insurer shall create a conclusive presumption that the facts stated in said notice and statement are correct, that the insurer is entitled to rely on such facts and that the cancellation of the insurance contract or contracts is concurred in and authorized by the insured. No liability of any nature whatsoever either in favor of the insured, any governmental agency, mortgagee or third party shall be imposed upon the insurer as a result of any misstatement of fact contained in said notice of cancellation or statement furnished by the insurance premium finance company to the insurer, or as result of failure by the insured, any governmental agency, mortgagee or third party to receive the notice of cancellation required by paragraph (2) above, or as a result of failure of the insurance premium finance company to comply with any of the requirements of this Subsection. Upon mailing of any unearned premium to the insurance premium finance company as soon as practicable following such cancellation, the insurer shall be fully discharged from all liability under the insurance contract or contracts for any loss occurring subsequent to the effective date of cancellation.
(4) Upon receipt of the notice of cancellation, the insurer shall give notice to any other governmental agency, mortgagee, or other third party as shown in the records of the insurer requiring statutory, regulation or contractual notice and which were not given by the premium finance company as provided in (3) above. The insurer shall give the prescribed notice on behalf of itself or the insured to any governmental agency, mortgagee, or third party on or before the fifth business day after the day it receives a copy of the notice of cancellation from the insurance premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation if such notice is given by the insurer, otherwise the effective date of cancellation shall be calculated from the date the premium finance company mailed the notice to such governmental agency, mortgagee, or other third party taking into consideration the number of days notice required to complete the cancellation.
H. Whenever a financed insurance contract is cancelled, the insurer shall return whatever gross unearned premiums, less any unearned commissions due the insurer, are due under the insurance contract to the insurance premium finance company for the account of the insured or insureds as soon as reasonably possible but in no event shall the period for payment exceed sixty days after the effective date of cancellation. In the event that the crediting of return premiums to the account of the insured results in a surplus over the amount due from the insured, the insurance premium finance company shall refund such excess to the insured provided that no such refund shall be required if it amounts to less than one dollar.
I. No filing of the premium finance agreement shall be necessary to perfect the validity of such agreement as a secured transaction as against creditors, subsequent purchasers, pledges, encumbrances, successors, or assigns.