BOUTALL, Judge.
George Humeniuk sued Union Carbide Corporation for personal injuries occasioned by the collapse of a wooden chute wall or railing leading to a foot bridge across a canal on Union Carbide's property. Hu-meniuk was a workman employed by H. B. Zachry Company who was the general contractor for the construction of a chemical unit for Union Carbide at its plant. While knocking off from work on June 2,1977, he was injured and now sues Union Carbide in tort. He bases the defendant’s liability upon its negligent activity under Civil Code Article 2315 and on the theory of strict liability under either Civil Code Article 2317 or 2322. The trial judge found that the accident was caused by Humeniuk’s participation in a plan to deliberately knock the railing down, and dismissed his suit. We affirm.
The trial judge gave very detailed findings of fact and we adopt them as our own. We quote:
“The following facts were not seriously disputed: Zachry employees used a designated parking lot on the enclosed Union Carbide plant. Adjacent to the parking lot were four enclosed lanes leading into the Union Carbide plant. Each lane contained two time clocks and the Zachry employees used these lanes and clocks to punch in and punch out for work.
To reach the construction site from the time clocks, Zachry employees crossed a bridge over a canal. This bridge was about 25 to 30 feet long by four feet in width. No safety problem existed when Zachry employees were reporting for work. However, the Zachry employees created dangerous problems at quitting time when there was an unruly mass rush for the bridge and the time clocks. To prevent this rush Zachry had supervisors at the bridge at quitting time, imposed sanctions for running and rushing, and finally constructed a chute at the construction site of the bridge to control entry onto the bridge. This chute was about 20 to 25 feet wide at the entrance, about 25 to 30 feet long and narrowed to the width of the bridge at the steps leading onto the bridge.
According to plaintiff he was in the rush through the chute when the overcrowding caused the walls of the chute to break and he was thrown to the ground and people fell over him and injured his knee.
Specifically this court finds that:
1. Zachry employees, including plaintiff, were unruly and undiciplined and rushed to reach the time clocks resulting in great over-crowding of the chute and the bridge: Hill, Hernandez, Rodrigue, Westbrook, plaintiff.
2. This even though Zachry supervisors attempted to control the entrance into the chute and the bridge and even though sanctions were imposed on employees who rushed or ran and Zachry disciplined many employees for violation of the rules and discharged a number of employees for those reasons: Hill, Hernandez, Ro-drigue Westbrook, plaintiff.
3. It took from 10 to 15 minutes for the employees to cross the bridge: Hill, Rodrigues, Westbrook.
4. Plaintiff was well aware that employees over-crowded the chute and the bridge.
5. More prudent employees waited at the entrance of the chute until the rush had subsided before entering the chute.
This court concludes that:
1. The chute and bridge were not defective nor unsafe. The cause of the accident was the over-crowding of the *165 chute by plaintiff and his fellow employees.
2. It is a universal custom of the chemical industry to enclose chemical plants. People enter onto chemical plants through supervised gates, or, in the case of employees, through supervised clock lanes. It is unheard of, if not physically impossible, to allow free and unrestricted entrance or exit from chemical plants. Free and unrestrained entry or exit from any site frequented by crowds is unheard of: people line up and wait for entry or exit from stadiums, theatres, amusement parks, ticket offices, license bureaus, etc. In this light the recommendations of Scardino are unrealistic: Firstly, the length of time involved in crossing the bridge in an orderly fashion was not excessive. Secondly, under the circumstances the bridge could have been expanded in accord with Scardino’s suggestions and the self-same rush would have occurred.
3. Zachry supervised the egress from the construction site. Zachry imposed rules governing the exit from the site and particularly at the chute. Zachry imposed sanctions on employees violating these rules and discharged employees for this reason. The unruly and undisciplined employees would not abide by the rules: This court believes the testimony of Hill and Rodrigue that the employees resented the chute and on the date of the accident were deliberately and intentionally destroying the chute. This court believes plaintiff was a willing participant in this effort.
4. This court believes that plaintiff willingly violated the rules imposed by Zachry, that plaintiff was well aware of the dangers of over-crowding the chute and the bridge; that plaintiff willingly participated in the mass rush into the chute and was injured through his own negligence.”
The appellate function requires that we should not disturb upon review reasonable evaluations of credibility and reasonable inferences of fact when there is a conflict in the testimony unless there is manifest error, or, put another way, unless it is clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We do not find that the trial judge was manifestly erroneous or clearly wrong, and we agree with his reasonable findings of fact.
Appellant alternately contends that even though such a decision may dispose of his entitlement to relief under the provisions of C.C. Article 2315, that nevertheless the bridge and the chute leading to it are built upon the property of Union Carbide and accordingly come under the strict liability principles set out in C.C. Articles 2317 and 2322. Appellant refers us to the interpretation of Article 2317 in the recent case of Loescher v. Parr, 324 So.2d 441 (La.1975) and the recent interpretation of Article 2322 in the case of Olsen v. Shell Oil Company, 365 So.2d 1285 (La.1979). He contends that the railing that collapsed and caused his injuries was in the custody of Union Carbide and its contractor, H. B. Zachry and that the property on which the bridge and railing were constructed belonged to Union Carbide.
By reference to the facts enumerated above, it is clearly shown that the bridge was constructed, operated and supervised by Zachry for its employees and that Union Carbide had no control over it. The bridge was placed in that position by Zachry and adapted for use by its employees, and the chute was constructed by Zachry several weeks before the accident in order to help control traffic. The facts do not show application of the principles of C.C. Article 2317. Similarly Article 2322 does not apply because the cause of the damage was not the ruin of the railing caused by neglect to repair it or as a result of a vice in its original construction, but the ruin was caused by the deliberate attempt of Za-chry’s employees to knock it down. This fact clearly distinguishes this case from the *166 case of Olsen v. Shell Oil Company, supra, which involved the explosion of a water heater in a modular living unit owned by an independent contractor and welded onto the oil well platform owned by Shell Oil Company.
For the reasons above assigned, the judgment is affirmed at appellant’s cost.
AFFIRMED.