484 So.2d 726 (1986)
Mrs. Beulah Willis and Mickie WILLIS
v.
CAJUN ELECTRIC POWER COOPERATIVE, INC., et al.
No. CA 84 1164.
Court of Appeal of Louisiana, First Circuit.
February 25, 1986.
Writ Denied May 12, 1986.
*728 Lennie F. Perez, Baton Rouge, for plaintiffs-appellees, Mrs. Beulah Willis, Mickie Willis.
Daniel R. Atkinson, Baton Rouge, for defendants-appellants, Cajun Elec. Power Co-op., Inc., U.S. Fidelity & Guar. Co.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
LANIER, Judge.
This is a suit for damages in tort alleging a construction worker employed by a general contractor was killed when the contractor's crane he was operating fell approximately 250 feet from the top of an electrical generating plant under construction. The surviving spouse and major son of the decedent brought wrongful death and survivors' actions against the owner of the plant and its insurer, asserting the strict liability of La.C.C. arts. 2317 and 2322. The owner and insurer answered the petition, denied liability and asserted the affirmative defenses of assumption of risk and contributory negligence. In the answer, a peremptory exception was pled which asserted the objection of no cause of action because the decedent was a statutory employee whose exclusive remedy was worker's compensation. In an amended answer, the owner and insurer pled the affirmative defenses of fault of a third party, victim fault and fortuitous event, contending the crane was owned, operated and in the custody of the decedent's employer. After a trial, the trial judge instructed the jury on the strict liability of La.C.C. art. 2317 but declined to submit the La.C.C. art. 2322 cause of action to the jury. The jury rendered a general verdict in favor of the surviving spouse and child for $300,000. The owner and insurer filed alternative motions for judgment notwithstanding the verdict and new trial which were denied. The trial court rendered judgment in accordance with the jury verdict. The owner and insurer took this suspensive appeal. The surviving spouse and child answered the appeal, contending the trial court committed error by not submitting the La.C.C. art. 2322 cause of action to the jury.

FACTS
Cajun Electric Power Cooperative, Inc. (CEPCO) is the owner of an electricity generating plant in Pointe Coupee Parish, Louisiana. The name of the plant is Big Cajun. Planning for expansion of the plant began in 1974, and the addition was called Big Cajun Project # 2. The plans called for construction of three boiler units. CEPCO retained Bovay Engineers, Inc. and Burns and Roe, Inc. for the design and construction management of the Big Cajun # 2 project. Babcock & Wilcox Construction Company, Inc. (B & W) was contracted to build boiler Unit 3. Construction began on Unit 3 in 1979.
The structural steel framework of Unit 3 was completed in January of 1981. The Unit 3 boiler was to be positioned within and suspended from this structure. At this point in time, the work on Unit 3 was 14% complete. The structural steel framework was approximately 250 feet (17 stories) high.
B & W brought in several large pedestal construction cranes to lift men and material inside the steel framework to build the boiler. To position (install) the cranes, B & W welded two large structural steel I beams to the top of the steel framework. (These I beams were referred to as railroad tracks.) The base of a crane was then bolted to the "railroad tracks". The crane itself was then bolted to its base through a circular plate, having 24 bolt holes for attachment. See diagram attached as Appendix *729 I. The crane involved in the accident herein was installed on top of the steel framework on or about January 14, 1981.
B & W secured the cranes from its materials and equipment division in Ohio. B & W arranged for the transportation of the cranes to the jobsite, received the cranes and stored them in the B & W area of the project site until they were to be installed. B & W employees inspected the cranes, lifted them to the top of the steel framework with B & W equipment and bolted them in place. The cranes were then operated by B & W employees. In particular, the crane which fell was operated by Warren T. "Doc" Willis, who was employed by B & W as an operator.
On January 21, 1981, Willis was operating one of the pedestal cranes on top of the steel framework. Willis commenced lifting a 4,000 pound beam when the crane became detached from its base and fell to the ground. The load at that time was within the capacity of the crane. The impact of the fall killed Willis. He was survived by his wife, Beulah, and his major son, Mickie.
The crane and its base were inspected after the accident. The inspection revealed the crane was attached to the base with only 6 bolts. The crane was designed to be attached to its base with 24 bolts. During the lift, the 6 bolts failed and the crane became detached and fell.
At all times pertinent herein, CEPCO was insured by United States Fidelity and Guaranty Company (USF & G).

LIABILITY UNDER LA.C.C. ART. 2317

(Appellants' Specification of Error No. 1)
CEPCO and USF & G (appellants) contend "the general jury verdict in favor of plaintiffs on the issue of CC 2317 strict liability is inconsistent with the law and the evidence".
The elements of proof for a plaintiff in an Article 2317 case are: (1) the thing which caused the damage was in the care and custody of the defendant; (2) the thing had a vice or defect that created an unreasonable risk of injury to another; and (3) the injury was caused by the defect. Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983) and the cases cited therein.
In Loescher v. Parr, 324 So.2d 441, 447 and 449 n. 7 (La.1975), appears the following:
The provision that one is responsible for damage "which is caused by the act ... of things which we have in our custody" is a translation of the provision of the French article, taken verbatim from the French Civil Code, that one is responsible for damage "qui est cause par le fait ... des choses que l'on a sous sa garde." See Article 2317 La.C.C. Comp.Ed. in 17 West's LSA-C.C. p. 17 (1972).6
....
6. At this point, however, we should note that the English translation of "sous sa garde" as "in our custody" does not fully express the concept of the "garde" of a thingthe legal responsibility for its care of keeping, so that one may lose the custody of a thing without losing its "garde". H.L. & J. Mazeaud, Traité Théorique et Pratique de la Responsabilité Civile, Volume 2, No. 1160 (6th ed. 1970); Verlander, We are Responsible ..., 2 Tulane Civil Law Forum No. 2, p. 61 (1974).
At Note, Things in One's Custody, 43 Tul.L.Rev. 907, 912 (1969), a French legal dictionary is quoted as defining "garde" as: "Obligation imposed by the law on the proprietor of a thing or of an animal or on the one who avails himself of it to prevent this thing or this animal from causing damage to others." It is there noted that French doctrinal writers afford the term an even broader definition.
....
7. In Verlander, We are Responsible..., 2 Tulane Civil Law Forum, No. 2, p. 64 (1974), which contains a perceptive and thorough analysis of the French, Quebecois, and Louisiana interpretations, *730 it is suggested: "[T]he things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. This relationship will ordinarily be associated with ownership, but the guardianship will also belong to the bailee, the lessee, the usufructuary, the borrower for use and the repairmen, among others. It will not belong to the agent or the mandatory, the employee or the servant, or to anyone else for whom there is a responsible principal. The owner may transfer the guardianship by transferring the thing to another who will bear such a relationship to the thing as to himself have the care of it. He may also lose the care of this thing, principally by the theft of the thing."
[Emphasis added.]
Ownership is an important element to consider in determining who has the custody (garde) of a thing for Article 2317 purposes. It has been held that, even though an owner has voluntarily or contractually given possession of his property to another, he may still have the custody (garde) of it for Article 2317 purposes. Goudchaux v. State Farm Fire & Casualty Company, 407 So.2d 1317 (La.App. 3rd Cir.1981), writ denied, 412 So.2d 1114 (La.1982); Cardwell v. Jefferson Rentals Division of J-R Equipment Corporation Assurance Company, 379 So.2d 255 (La.App. 4th Cir.1979), application to withdraw writ granted, 382 So.2d 164 (La.1980). The person having custody (garde) of a thing has a legal duty "to keep his thing in such condition or in such control that it does no damage to others." Loescher, 324 So.2d at 448.
The uncontested facts of this case show that the custody (garde) of the pedestal crane was not transferred from B & W to CEPCO at the time of the accident. B & W at all times was the owner of the pedestal cranes. B & W brought the cranes to the work site, stored them, inspected them, installed them and, after the work was completed, removed them from the site. The cranes were operated by B & W personnel.
Assuming for the purpose of argument that CEPCO was the owner of the steel framework of Unit 3 at the time of the accident, the attachment of the pedestal cranes to the framework did not transfer ownership of the cranes to CEPCO. The ownership, possession, supervision and control of the cranes remained in B & W. The cranes were not intended to be component parts of (permanently attached to) Unit 3; they were only used for construction purposes by B & W. There is no evidence showing that CEPCO was a bailee, lessee, usufructuary, borrower or repairer of the cranes. B & W did not transfer the custody (garde) of the cranes to CEPCO. Cf. Nettles v. Bowlin, 417 So.2d 1192 (La.App. 1st Cir.1982), writ denied, 422 So.2d 416 (La.1982).
Although CEPCO contractually reserved the right to generally control the work and test and inspect all material and equipment, this right did not impose an obligation on CEPCO to do so. In the CEPCO-B & W contract, B & W assumed the following obligations:
ARTICLE IVPARTICULAR UNDERTAKINGS OF THE BIDDER
Section 1. Protection to Persons and Property. The Bidder shall at all times exercise reasonable precautions for the safety of employees on the work and of the public, and shall comply with all applicable provisions of Federal, State and Municipal safety laws and building and construction codes. All machinery and equipment and other physical hazards shall be guarded in accordance with the "Manual of Accident Prevention in Construction" of the Associated General Contractors of America, unless such instructions are incomparible with Federal, State or Municipal laws or regulations.

The following provisions shall not limit the generality of the above requirements:
....

*731 (c) The Project, from the commencement of work to completion, or to such earlier date or dates when the Owner may take possession and control, in whole or in part as hereinafter provided, shall be under the charge and control of the Bidder and during such period of control by the Bidder all risks in connection therewith and the materials, supplies and equipment to be used therein shall be borne by the Bidder, except risk of loss or of damage to materials or equipment furnished for or used in connection with the Project by the Owner, Bidder or any subcontractor, caused by fire, lightning, wind damage, explosion, riot or civil commotion, aircraft and other vehicles, and smoke damage (against which perils the Owner will maintain insurance, hereinafter called "Builder's Risk Insurance").... The Bidder will hold the Owner harmless from any and all claims and losses, including related expense and costs including attorneys fees, for injuries to persons or for damage to property, occurring by reason of any negligence on the part of the Bidder or any of the Bidder's agents or employees, during the control by the Bidder of the Project or any part thereof.
[Bolding supplied.]
At the time of the accident, CEPCO had not assumed control over the project. B & W had control of the project (including the steel framework) and had the contractual obligation to guard all "machinery and equipment".
The steel framework and the pedestal crane were not defective. The unreasonable risk of harm herein was caused by the negligent way in which the otherwise nondefective crane was installed on its base by B & W's employees. CEPCO did not have such control and supervision over the crane that it should be held responsible for a dangerous condition caused by the negligence of the employees of its independent contractor, B & W. Cf. Brummerloh v. Firemen's Insurance Co. of Newark, N.J., 377 So.2d 1301 (La.App. 3rd Cir.1979).
The case of Colleps v. State Farm General Insurance Company, 446 So.2d 988 (La.App. 3rd Cir.1984) is factually similar in many respects to the instant case. Colleps was gratuitously helping his son-in-law, Lowrey, to build a family home. Colleps owned a ladder and brought it to the jobsite for use by himself and others. While Colleps was using the ladder, it fell over and he was injured. Lowrey testified he viewed the ladder after the accident and saw one leg of the ladder was partially broken at about the first rung. In denying Colleps' Article 2317 claim, the court observed as follows:
Colleps contends that the ladder was exclusively in the possession and control of Lowery [sic]. We disagree. The ladder was owned by Colleps for some years. He allowed persons working at the home's construction site to use the ladder. Colleps supervised the placement of the ladder prior to the accident. Colleps was using his own ladder at the time of the accident. Therefore, Colleps has failed to prove custody by Lowery [sic], an essential element under art. 2317.
[Colleps, 446 So.2d at 990.]
See also Steele v. Helmerich & Payne International Co., 565 F.Supp. 993 (E.D. La.1983), affirmed, 738 F.2d 703 (5th Cir. 1984).
The case of Dusenbery v. McMoran Exploration Company, 433 So.2d 268 (La. App. 1st Cir.1983), reversed in part on other grounds, 458 So.2d 102 (La.1984), cited by appellees, is factually distinguishable from the instant case. In Dusenbery, a contractor welded the wrong nipple on a pipeline pig launching system. The contractor was found to be negligently liable, and the owners of the pipeline on which the nipple was welded were found strictly liable under La.C.C. art. 2317. When the nipple was welded on the pipeline, the ownership of it was transferred to the owners of the pipeline and the nipple became a component part of the pipeline. In the instant case, the ownership of the crane remained in B & W and the crane did not *732 become a component part of Unit 3. The crane was only temporarily attached to the steel framework of Unit 3 for construction purposes.
Because the uncontested facts of this case show that the custody (garde) of the crane was never transferred from B & W to CEPCO, the jury verdict to the contrary is wrong as a matter of law, and this assignment of error has merit.[1]

LIABILITY UNDER LA.C.C. ART. 2322

(Appellees' Assignment of Error No. 1)
The appellees answered the appeal and asserted the "trial court committed error when it refused to instruct the jury on the principles of strict liability underlying Article 2322 of the Civil Code."
Assuming for the purpose of argument that the steel framework of Unit 3 was a "building" and was owned by CEPCO at the time of the accident, the trial court nevertheless correctly held that the construction equipment (crane) owned by B & W, which was transitorily attached to the building, was not an appurtenance thereof for La.C.C. art. 2322 purposes. The evidence shows the construction equipment (crane) was not intended to be permanently attached to the building or become an integral part thereof. Thus, the crane did not become a component part of the building as a matter of law. La.C.C. arts. 465 and 466.
In Lopez v. Sears, Roebuck & Company, 405 So.2d 1124 (La.App. 4th Cir. 1981), writ denied, 407 So.2d 748 (La. 1981), the employee of a contractor was injured while he was using an allegedly defective electric saw owned by his employer which was brought onto the premises of a shopping center in connection with construction work. (Undoubtedly, the electric saw was plugged in at a shopping center electrical outlet.) The employee brought suit against the owner of the shopping center and his insurer (among others). The owner and insurer filed a motion for summary judgment which was granted by the trial court. The appellate court affirmed holding "the saw was not an appurtenance to appellee's building". Lopez, 405 So.2d at 1125. For purposes of liability under Article 2322, it should not make any difference whether construction equipment owned by a contractor (and thus not owned by the owner of the building under construction) is connected to the building by an electrical plug or by removable bolts.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered dismissing the appellees' petition against CEPCO and USF & G with prejudice and at appellees' cost.
REVERSED AND RENDERED.
*733 
NOTES
[1] Because we find merit in appellants' assignment of error number 1, we do not consider assignments of error numbers 2 through 7. Also, we need not consider the issue of whether negligent use of a nondefective thing can be a defect and/or third party fault under La.C.C. art. 2317. See, for example, Stine v. Creel, 417 So.2d 1243 (La.App. 1st Cir.1982), writ denied, 422 So.2d 163 (La.1982); Humeniuk v. Union Carbide Corporation, 416 So.2d 163 (La.App. 4th Cir.1982); Rapattoni v. Commercial Union Assurance Company, 378 So.2d 953 (La.App. 3rd Cir.1979).