542 So.2d 642 (1989)
William Danny LEBLANC
v.
HULLINGHORST INDUSTRIES, INC., Agrico Chemical Company of Delaware, and Jay Kempt.
No. 88-CA-835.
Court of Appeal of Louisiana, Fifth Circuit.
April 12, 1989.
*643 Anatole J. Plaisance, Baton Rouge, for plaintiff/appellant.
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Charles S. McCowan, Jr., Vance A. Gibbs, Brian F. Blackwell, Baton Rouge, for defendants/appellees.
Before KLIEBERT, BOWES and GOTHARD, JJ.
GOTHARD, Judge.
This is a suit for damages for injuries sustained in a fall from scaffolding at a chemical plant. The plaintiff appeals from summary judgment in favor of the owner of the plant.
On July 19, 1985 William Danny LeBlanc was employed by Hullinghorst Industries, Inc., as a laborer. He was part of a crew assigned to assemble a metal scaffold on a sulfuric acid tank at a plant operated by Agrico Chemical Company of Delaware, Inc., in St. James Parish. He was standing on a brace of the scaffold, reached up to grab another brace to steady himself, and fell when that brace gave way.
LeBlanc filed suit against Hullinghorst, Jay Kemp (LeBlanc's supervisor), and Agrico. Agrico filed a third party demand against Hullinghorst, John May Corporation, and May's insurer, Scottsdale Insurance Company. May had a maintenance contract with Agrico to provide regular maintenance, insulation, and scaffolding *644 for the installation, and sub-contracted the scaffolding work to Hullinghorst. LeBlanc settled and dismissed his claim against Hullinghorst and Kemp, reserving his rights against the remaining defendant, Agrico. Agrico moved for summary judgment. Shortly before the hearing, LeBlanc filed an amended petition to add as defendants May Corporation, John May individually, Scottsdale, and Freeport-McMoran Resource Partners, Limited Partners, Agrico's successor in title to the plant.[1] Summary judgment dismissing LeBlanc's claims against Agrico and Freeport was signed on October 4, 1988. This appeal followed.
In his initial petition LeBlanc alleged Agrico's liability under the theories of negligence, strict liability for damages from ruin of a building, and strict liability for damages from a thing which it had in its custody. In the amending petition LeBlanc added a cause of action based on liability for damages caused by ultra-hazardous activity.
The only issue before this court is whether summary judgment was appropriate in this case. The appellant assigns as error the court's finding no issue of material fact as to Agrico's duty to inspect, maintain, or supervise Hullinghorst's operations and as to Agrico's custody of the scaffold.
Negligence
The appellant refers to Agrico's negligence in his brief and argues that Agrico's duty to LeBlanc arises from its having the right to exercise direction or control over the installation of the scaffolding, regardless of whether it did exercise the right. He bases this argument on Jones v. City of Baton Rouge, Etc., 388 So.2d 737 (La.1980) and Morgan v. Hartford Acc. & Indem. Co., 402 So.2d 640 (La.1981). In both cases the court found the offending object was clearly in the custody of the defendant and had not been transferred to another; for that reason both defendants were held to be liable under LSA-C.C. art. 2317. Accordingly, we find that both of LeBlanc's assigned errors relate to his allegations of strict liability upon Agrico, as owner of the plant, rather than negligence, and their resolution depends upon whether or not Agrico had custody of the scaffolding under construction.
Liability under LSA-C.C. art. 2317
Fault under article 2317 is based upon one's relationship to a thing and provides that one is responsible for damage caused by "the things we have in our custody." In Loescher v. Parr, 324 So.2d 441 (La.1975), the court discussed the concept of custody as the basis of legal fault without negligence. Article 2317 is translated directly from the French Civil Code and the word garde, which the Louisiana redactors translated into "custody", means the legal responsibility for the care or keeping, or guardianship. Guardianship may be transferred by the owner to another. Loescher v. Parr, at 449, n. 7.
To prove liability under article 2317 the plaintiff need not allege negligence but must show: (1) the thing which caused the damage was in the care and custody of the defendant; (2) the thing had a vice or defect that created an unreasonable risk of injury to another; and (3) the defect caused the injury. Willis v. Cajun Elec. Power Co-Op. Inc., 484 So.2d 726, (La.App. 1st Cir.1986), writ denied 488 So. 2d 200 (La.1986). There is an irrebuttable presumption that the custodian had knowledge of the defective condition. Once the plaintiff has established a defect and custody, the only defenses available are the fault of the victim, the fault of a third person, or causation by an irresistible force. Jones v. City of Baton Rouge, supra.
The crucial question in this case is whether or not Agrico carried its burden of showing that it did not have custody of the scaffolding. The contract between John May Corporation and Agrico indicates that May Corporation was an independent contractor "with the authority to control and direct the performance of the details of the work, Agrico being interested only in the results obtained." The work must meet *645 Agrico's approval and Agrico had the right to inspect. The contract states that May Corporation was to "furnish the necessary tools, labor, supervision, insulation and scaffolding to perform various jobs as directed by Agrico Chemical.... The jobs to be performed will be as requested by an authorized representative of Agrico and directed to you as `Contractor'." John May's deposition indicates that he informed Agrico that he would subcontract the scaffold work to Hullinghorst. A principal is generally not liable for offenses of an independent contractor in carrying out his contractual duties. Williams v. Gervais F. Favrot Co., 499 So.2d 623 (La.App. 4th Cir. 1986), writ denied 503 So.2d 19 (La.1987).
May stated he owned no scaffolding material and to his knowledge Agrico owned none. Jay Kemp, Hullinghorst's employee, testified by deposition that to the best of his knowledge the scaffolding belonged to Hullinghorst and that it was brought to the job site by Hullinghorst trucks. The scaffolding was stored in Hullinghorst's yard across from the plant and trucked over as needed during the plant's annual turnaround. Kemp stated that Hullinghorst used "system type scaffolding," made by Scaffolding of Britain, from whom "we buy our scaffolding." Kemp said he had worked on at least four scaffolding jobs at Agrico and he had never seen any Agrico employee inspecting his work. He submitted his daily time sheets weekly to a May Corporation employee for approval, then sent them to Hullinghorst's payroll division for billing to the Corporation. An Agrico employee showed Kemp where the scaffolds were needed but no instructions on how to proceed with the work. He reported to an Agrico employee each morning only as to the number of his men working that day and the progress of the work.
LeBlanc opposes summary judgment on grounds that evidence submitted by Agrico does not negate the possibility that Agrico owned or leased the scaffold material. LeBlanc submitted the copy of an invoice from May Corporation billing Agrico for rental of scaffolding. None of the depositions contained specific information as to the Corporation's billing practices; however, we note that other invoices from May Corporation to Agrico are itemized as to labor, truck rental, etc. and contain substantiating documents such as time sheets. The scaffold rental invoice uses the same format and states, "We invoice you for scaffold rented per the attached:..." The attachments are invoices from Hullinghorst Industries to John May Corporation, which are imprinted with all the scaffold components carried by Hullinghorst and show the quantity of each item shipped to May Corporation. We conclude that Hullinghorst leased the material to May Corporation, which then billed Agrico just as it did for other items. The affidavit of Jimmy Reid Sanderson, manager of Administrative Services of Agrico, attests that he reviewed the purchase orders on file in Agrico's office and determined that Agrico did not at any time purchase or lease the scaffolding that is the subject of this lawsuit. We agree with the trial judge who said in his reasons for judgment, "The fact that Agrico may have reimbursed John May for certain scaffolding which May may have leased or rented does not, in the Court's opinion, make Agrico the lessee or custodian of such scaffolding."
We find that the record shows clearly that at no point did Agrico own, lease, or have custody or control of the scaffolding as contemplated by LSA-C.C. art. 2317. As the trial court held, mere physical presence on Agrico's premises does not constitute custody. The facts of this case are similar to those of White v. Gulf States Utilities Co., 525 So.2d 145 (La.App. 3rd Cir.1988), in which a worker fell from a temporary elevator at a Gulf States facility. The court found no liability on Gulf States' part, because the general contractor had full and continuous control of the elevator. Although Gulf States representatives visited the site periodically to observe the quality of the work and compliance with the contract, they performed no supervisory duties. See also Willis v. Cajun Elec. Power Co-Op., Inc., supra.
*646 The purpose of summary judgment is to dispose expeditiously of cases involving issues of law and/or uncontested issues of fact. Dette v. Covington Motors, Inc., 426 So.2d 718 (La.App. 1st Cir.1983). It is appropriate only when the record shows that there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. We hold that the defendants, Agrico and Freeport, have made such a showing and that summary judgment was appropriate.
For the reasons assigned above, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] Freeport joined Agrico's motion for summary judgment.