502 So.2d 1026 (1987)
Dean Ross, Wife of/and John K. ROSS
v.
Daniel LA COSTE de MONTERVILLE, Erick Houeland, State Farm Insurance Company and Harry's Ace Hardware Store.
No. 86-C-0538.
Supreme Court of Louisiana.
February 23, 1987.
Rehearing Denied March 25, 1987.
*1027 Kenny Charbonnet, for applicant.
Joseph Ward, Ward & Clesi, Owen Neff, Peter Title, Sessions, Fishman, et al., for respondent.
DENNIS, Justice.
The issue in this case is whether the owner of a thing containing structural defects who gratuitously lends it to a borrower continues to have the garde or custody of the thing's structure and therefore may be held strictly liable for the borrower's injuries caused by its defects. The co-owner of an apartment building loaned a ladder to a new tenant and the tenant's father for use in redecorating an apartment. The ladder collapsed injuring the father. A jury awarded the plaintiff father damages based on its conclusion that the owners of the building and the ladder were strictly liable for the father's injuries because the injuries were caused by the ladder's collapse, the ladder's collapse was caused by structural defects creating an unreasonable risk of harm, and the owners were responsible for damage caused by the ladder's defects. The court of appeal reversed, concluding that prior to the ladder's collapse the owners had transferred its custody by gratuitous loan to the plaintiff father who became a borrower for use. We reverse. An owner who transfers possession of his thing having a structural defect to another continues to have the garde or custody of its structure and a duty to protect others from harm caused by the defect. Although the owner of a thing may be both its guardian and its gratuitous lender, his obligation of strict liability under Civil Code article 2317 is separate and independent in basis from his obligation to repair damage caused by his negligent or intentional failure to warn the borrower of known defects, *1028 which is imposed generally by articles 2315 and 2316 and specifically by article 2909. Consequently, an owner must be aware of the defects in his thing before he can become obliged to make reparation for his negligent failure to warn a gratuitous borrower, but he need not have such knowledge in order to be obliged in strict liability for the damage caused by his defective thing. In fact, when harm results from the defect of a thing which creates an unreasonable risk of harm to others, a person legally responsible for the guardianship of the thing may be held liable for the damage, despite the fact that no personal negligent act or inattention on the former's part is proved.

1. The Facts
John K. Ross, the plaintiff, was severely injured when an aluminum step ladder upon which he was standing collapsed while he was redecorating his son's new apartment. One of the owners of the apartment building had approved of the redecoration and had loaned Mr. Ross and his son the owners' step ladder for this purpose. The ladder collapsed several hours after the redecorations began and shortly after the owner had visited the apartment to inspect the procedures and to determine whether he approved of the paint being used.
The evidence does not indicate that the plaintiff could have detected any defect in the ladder before the accident or that either he or his son misused the ladder. The only reasonable explanation for the accident was that a steel rivet had gradually worn an outsized hole in the softer aluminum of the ladder allowing the rivet to slip through and the ladder to come apart.

2. General Principles
Civil Code article 2317, in pertinent part, provides: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. * * *"
This court has recognized that a principle of legal fault or strict liability underlies article 2317 as well as articles 2318-22. In order to recover in strict liability under article 2317, the injured person must prove that he was injured by a thing, that the thing was in the defendant's custody, that there was a vice or defect creating an unreasonable risk of harm in the thing, and that the injured person's damage arose from that danger. This court has held that upon proof of these elements, the guardian is fully responsible for the damages, unless he proves that the damage was caused by the fault of the victim, by the fault of a third person, or by an irrestible force. Entrevia v. Hood, 427 So.2d 1146 (La.1983); Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978); Loescher v. Parr, 324 So.2d 441 (La.1975). The person having custody of the thing is not absolved from his strict liability by his ignorance of the condition of the thing or by circumstances that show the defect could not easily be detected by the custodian. Id. See Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La. 1986).

3. Lower Court Decisions
Plaintiff sued the owners of the ladder, their liability insurer, the merchant who sold the ladder to the owners, and the manufacturer of the ladder. The suits against the manufacturer and the merchant were dismissed on motions for summary judgment and directed verdict. After trial the jury returned a verdict in plaintiff's favor for $90,000 against the remaining defendants, reducing plaintiff's recovery by 10% based on total damages of $100,000. Defendants appealed contesting liability and plaintiff answered the appeal seeking an increase in the award.
On appeal, the defendants argued that the trial court's jury instructions did not comport with the law of strict liability on the part of the owner of a defective thing under Civil Code article 2317. The court of appeal concluded not only that the jury instructions were erroneous but also that under the undisputed facts plaintiff's recovery *1029 was barred as a matter of law. Consequently, the court of appeal reversed the trial court judgment, 482 So.2d 671.
The twofold rationale of the court of appeal's decision was that (1) an owner of a thing who places it in the physical possession of another loses custody of the thing and cannot be held responsible for damage caused by its defects under article 2317; and (2) an owner who gratuitously lends his thing to another without knowledge of the defect herein acquires a defense to what would otherwise be his strict liability for damages caused by the defect under article 2317 because he also becomes a lender for use who, under article 2909, is liable to a borrower injured by a defect in the thing only if the lender knew of the defect and failed to advise the borrower of it.
Thus, the legal issues presented are (1) whether the owner of a thing who lends it to another loses custody of the thing for purposes of strict liability under article 2317; and (2) whether an owner's lack of knowledge of a defect in a thing is transformed into a defense to article 2317 strict liability because he made a gratuitous loan of the thing as contemplated by article 2909.

4. Custody or Garde

An owner who transfers to another possession of his thing containing a structural defect continues to have the garde or custody of its structure and a duty to protect others from harm caused by the defect. The source of our concept of custody or garde, article 1384(1) of the French Civil Code, provides that we are responsible for damage caused by the act of things which we have "sous sa garde". According to the French understanding, garde is the obligation imposed by law on the proprietor of a thing or on the one who avails himself of it to prevent the thing from causing damage to others. Consequently, the French courts hold that an owner may be responsible for damages caused by the structural defect of his thing even when the injury occurs after the owner has lost physical custody of the thing. Because the French versions of the Louisiana Civil Codes of 1808 and 1825 used the words "sous sa garde", and because this term does not translate easily into English, we conclude that the translations of this term as "in our custody" in the 1825 English text and in the 1870 Code do not signify an intention to depart from the French substantive rule. Therefore, we conclude that in applying article 2317 we should afford the concept of custody the same interpretation accorded the idea of garde by the French authorities, because our article was drawn from French sources and because there is no reason to think that the legislature intended to change the legal content of the code provision.
Article 2317 was essentially enacted by the codification of 1808 (C.C. 1808, p. 320, art. 20, par. 1) and reenacted in its present text as article 2296 of the Civil Code of 1825. The wording of the French version of the 1808 enactment was identical to that of French Civil Code article 1384(1) except for punctuation. The text of the French version of the 1825 enactment was identical to that of the 1808 enactment, except that a second sentence was added to both it and the English version. ["... Ce qui doit s'entendre avec les modifications suivantes."] ["This, however, is to be understood with the following modifications".] (C.C.1825, art. 2296) Both the 1808 and 1825 Codes used the words "sous sa garde" in their French versions. In the English versions, these words were translated as "in his keeping" in 1808 and "in our custody" in 1825. Article 2317 of the Civil Code of 1870 is the same as the English version of article 2296 of the 1825 codification. See article 2317, La.C.C.Comp.Ed., in 17 West's L.S.A.-C.C., p. 17 (1972).
It is clear from this legislative history that the consistent use of the French word garde indicates an aim to adopt the substance of French Civil Code article 1384(1) in this respect. Had the legislators wished to deviate from the French provision they easily could have used different wording in the French versions of the codes. On the other hand, since there does not appear to be a single English word which conveys the *1030 same meaning as garde, the English translations should be read in the light of the meaning of the French text. Moreover, this court has held that the French version of the Code of 1825 is controlling as to articles which have not been changed since that time. Sample v. Whitaker, 172 La. 722, 135 So. 38 (1931); Straus v. New Orleans, 166 La. 1035, 118 So. 125 (1928); Phelps v. Reinach, 38 La.Ann. 547 (1886); See Shelp v. National Surety Corp., 333 F.2d 431 (5th Cir.1964); Note, Things in One's CustodyLouisiana Civil Code Article 2317, 43 Tul.L.Rev. 907 (1969). Consequently, we conclude that the English word "custody" in article 2317 should be construed as having a meaning equivalent with garde as understood and applied by the French courts and authorities.
When this court first interpreted article 2317 as incorporating a concept of legal fault similar to that represented by article 1384(1) of the French Civil Code, it observed that "the English translation of `sous sa garde' as `in our custody' does not fully express the concept of the `garde' of a thingthe legal responsibility for its care of keeping, so that one may lose the custody of a thing without losing its `garde'." Loescher v. Parr, 324 So.2d at p. 447, n. 6 (citing H.L. & J. Mazeaud, Traite Theorique et Pratique de la Responsibilite Civile, Volume 2, No. 1160 (6th ed. 1970); Verlander, We Are Responsible ..., 2 Tulane Civil Law Forum No. 2, p. 61 (1974)). Moreover, in Loescher this court quoted with approval a passage from a casenote entitled Things in One's Custody, 43 Tul.L. Rev. 907, 912 (1969) quoting a French legal dictionary as defining garde as:
"Obligation imposed by the law on the proprietor of a thing or of an animal or on the one who avails himself of it to prevent this thing or this animal from causing damage to others."
and noted that French doctrinal writers afford the term an even broader definition. Loescher, supra, at p. 447 n. 6.
The Loescher court did not examine the French decisions and doctrinal writers further on the subject of garde because it was undisputed in that case that the tree which caused the damage was both owned by and in the physical custody of the defendant. In this case we are called upon to seek more specific guidance from the French authorities as to whether an owner of a thing loses garde when he transfers possession of it to another.
In actual application of the French law, the garde of a thing may be divided between two persons, that is, between the guardian of the conduct of the object who is presumed to be responsible for damage caused by its behavior and the guardian of its structure who is responsible for damage caused by the object's defects. This distinction has been accepted implicitly by the courts and has been expressly adopted by a majority of the writers. Bouesse v. Lechaume, Cass. civ., 3 November 1942, D.1947. J. 145 (note Tunc); Florens v. Valls et Cie La Nationale, Cass., Ch. civ., 2d sect. civ., 13 October 1965, J.C.P.1966. II. 14503 (note Esmein); Societe Commerciale Europeenne des Brasseries "Brasseries de la Meuse" v. Etablissements Boussois-Souchon-Neuvesel et al, Cour de cassation, 2d civ. ch., 5 June 1971, [1971] Bulletin des Arrets de la Cour de cassation. II. no. 204; Durry, 70 Revue trimestrielle de droit civil 139 (1972); Tunc, La Determination du Gardien dans la Responsabilite du Fait des Choses Inanimees, J.C.Y.1960. I. 1592; Goldman, De la Determination du Gardien responsable du Fait des Choses Inanimees 208 (1947). (These commentaries and cases were republished in English by Arthur von Mehren and James Gordley in the second edition of The Civil Law System dated 1977.)
For example, in Florens v. Valls et Cie La Nationale, Cass., Ch. civ., 2d sect. civ., 13 October 1965, J.C.P.1966. II 14503 (note Esmein), the car belonging to Florens, while being driven in a parking garage, was hit by Valls' car, driven by an attendant. Florens sought to recover for the resulting damage from Valls under French Civil Code article 1384(1). The lower courts gave judgment for Valls on the ground that he had not retained the garde *1031 of the car. The pourvoi to the Cour de cassation was unsuccessful: "The judges below, having found that, in leaving his car in the parking garage, Valls gave to the custodian of the garage the keys to the car so that he could move it if necessary to facilitate the entry and departure of other vehicles, could conclude that Valls has transferred the powers of use, direction and control so that he was thus discharged from the responsibility of garde." von Mehren, supra, at p. 670.
In his note to the case, Professor Esmein considers the result correct but remarks that, if the damage had had its source in a defect in the vehicle, the parking garage would not be liable under article 1384(1). He explained that "[t]he case law relative to the guardian of an object or of an animal is based on the idea that the person presumed responsible is he who, governing in fact the object or the animal, has the power by his prudence and skill to prevent an accident. This alone explains why the guard is transferred to a lessee, to one who borrows, etc., and does not remain with the owner, except in the case of responsibility for defects." (emphasis added) Id.
In Societe Commerciale Europeenne des Brasseries "Brasseries de la Meuse" v. Etablissements Boussois-Souchon-Neuvesel et al, Cour de cassation, 2d div., ch., 5 June 1971, the high court refused to disturb a judgment against the manufacturer and supplier which did not have physical possession of the harmful thing at the time of an accident. A minor was injured when the bottle of lemonade which his aunt had given him exploded. His father ultimately asserted an action against the manufacturer and supplier, the bottler and the retailer of the bottle of lemonade. In sustaining the judgment against the manufacturer the court observed that although there was no fault on the part of the Brasseries de la Meuse it "had proceeded to fill the bottle with a charged liquid that produced an internal pressure, and that the Brasseries de la Meuse had control of the bottle and of its refilling ..., that none of the subsequent owners or possessors had the possibility of testing and that the bottle exploded in the victim's hands without any shock having occurred...." Under these circumstances, the court concluded that the lower court could decide that the manufacturer "retained the garde of the bottle of lemonade." von Mehren, supra, at p. 676-77.
The decision was commented upon by Durry in 70 Revue trimestrielle de droit civil 139, at 140 (1972): "The decision is important for two reasons. In the first place, it constitutes an application of the distinction between the `garde' of structure and of behavior, even though it does not utilize this terminology. The decision attaches itself decisively to the line of cases... favorable to this duality of the gardes. Secondly, the decision makes clear when the guardian of the structure can be held liable. It is necessary ... that the accident not arise from `an act (fait) external to the object,' or, in other words, that the accident be due to a proven defect in the object." von Mehren, supra, at p. 677.
Generally on the subject, Professor Tunc has explained: "It is because article 1384(1), as it is actually interpreted, contains at once a presumption of fault and an obligation to guarantee against defects in objects that legal writing (la doctrine) has recently been led to distinguish between two guardians: the guardian of the conduct of the object, he upon whom rests the presumption of fault, and the guardian of its structure, responsible for damage caused by the object's defects." Because the dual guardianship will sometimes put the victim in a difficult situation, Tunc suggests that "the presumption of responsibility of article 1384(1) rests cumulatively on the guardian of the structure and guardian of the behavior; subject to each guardian, liable to the victim in solidum, being able to bring an action against the other if he can show that the accident is either solely due to a defect in the object or to the use made of it...." Tunc, La Determination du Gardien dans la Responsibilite du Fait des Choses Inanimees, J.C.P.1960. I. 1592 and von Mehren, supra, at p. 677-78.
*1032 In light of these authorities, we conclude that an owner of a thing who transfers its possession, but not its ownership to another, continues to have the garde of its structure and is obliged to protect others from damage caused by structural defects arising before the transfer. As we have previously observed, the principle of legal fault or strict liability underlying Civil Code articles 2317-22 is analogous to the principle of strict products liability. Halphen v. Johns-Manville Sales Corp., supra, at p. 116-17. Although the manufacturer usually does not have custody of the product when the injury occurs, in order for strict liability to arise, the plaintiff must prove that the product's unreasonably dangerous condition existed at the time the product left the control of the manufacturer, and that the product reached the user in substantially that same defective condition. As between the innocent consumer of a product and the manufacturer, the manufacturer is in the better position to detect, evaluate and take steps to eliminate an unreasonable risk of harm arising in his product before it leaves his control. Likewise, the owner of a thing is in a better position than the innocent victim to guard against the unreasonable risks of structural defects in the thing he owns which arise before he transfers possession of it to another.
We do not embrace the French concept of garde of the conduct of an object, however, because to do so would obliterate the basic element which distinguishes article 2317 strict liability from the French theory. In its landmark decision in Jand'heur C. Les Galeries Belfortaises, Judgment of February 13, 1930. D.P.1930 I. 57, the Court of Cassation set forth several major propositions: (1) That the presumption of responsibility established by article 1384(1) on the part of one who has under his garde an inanimate thing which causes damage to another can only be rebutted by proof of cas fortuit, force majeure, or an external cause not imputable to the defendant; (2) It is not sufficient that the guardian prove that he was not at fault, or that the true cause of the damage is unknown; these are not defenses under this presumption; (3) It is not necessary to distinguish, for this presumption to apply, whether the thing which caused the damage was or was not activated or guided by the hand of man; and it is not necessary that the thing have any inherent vices susceptible of causing damage. See Verlander, We Are Responsible..., 2 Tulane Civil Law Forum, No. 2, p. 34 (1974). The Loescher court in adopting a similar legal fault or strict liability theory under our article 2317, however, adopted only the first two propositions, and, in effect, reversed the third proposition. The opinion in our landmark case of Loescher v. Parr, made clear from the beginning that to recover under article 2317 the victim must prove in addition to damage caused by a thing within the defendant's garde, that the damage resulted from a vice or defect creating an unreasonable risk of harm in the thing.
Consequently, a defendant may not be held liable under article 2317 without proof that the thing had a vice, defect or quality posing an unreasonable risk of harm to others. Therefore, only the concept of garde of the structure of a thing is relevant to article 2317 strict liability theory.
5. Lack of Knowledge is not a Defense
Once an injured plaintiff proves that his damage was caused by the vice of a thing creating an unreasonable risk of harm within the garde of a defendant, the guardian is responsible unless he shows the harm was caused by the fault of the victim, the fault of a third person, or an irresistible force. The guardian cannot be absolved from his strict liability by proving that he did not know and could not have known of the unreasonable risk of harm to others. Consequently, the injured plaintiff's failure to prove the guardian's knowledge of the defect prior to the accident does not defeat his action in strict liability under article 2317. If the plaintiff borrowed the thing from a gratuitous lender prior to his injury, his action against the owner as a lender for failure to warn of the defects under article 2909, 2315 and 2316 would be defeated by his failure to prove that the lender had *1033 knowledge of the defects. The two rights of actions are separate and independent, however, as are the obligations which may be enforced thereby. The defeat of one right of action does not dissolve or render the other inoperative.
A loan for use is a contract whereby one person gratuitously gives a thing to another, who may use it according to its natural destination, and who is under the obligation to return it. La.Civil Code article 2893-94. When the thing lent has defects of such a nature that it may occasion injury to the person who uses it, the lender is answerable for the consequences, if he knew of the defects and did not apprise the borrower of them. La.Civil Code article 2909. See Mudd v. Travelers Indemnity Co., 309 So.2d 297 (La.1975).
According to Planiol, the obligation of the lender to indemnify the borrower for the damage the vices of the thing may have caused him, when the lender knew of their existence, originates in a fraud of the lender. 2 Planiol, Traite Elementaire de Droit Civil, Part 2, no. 2057 (1959). On the other hand, Professor Stone indicates that the lender's failure to adhere to the standard of conduct established by article 2909 constitutes personal fault under Civil Code article 2315 and 2316 and obliges him to repair the damage caused by his failure to warn of the defects in the thing. F. Stone, Tort Doctrine in Louisiana: The Materials for a Decision of the Case, 27 Tul.L.Rev. 159, 210-212 (1942). Thus, the breach of the duty established by article 2909 gives rise to a right of action by the borrower and an obligation to repair by the lender under La.Civil Code articles 2909, 2315 and 2316 based on the latter's personal fault in intentionally or negligently failing to warn of known defects. See Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971).
Strict liability, as the term is commonly used, "means liability that is imposed on an actor apart from either (1) an intent to interfere with a legally protected interest without a legal justification for doing so, or (2) a breach of a duty to exercise reasonable care, i.e., actionable negligence. This is often referred to as liability without fault." Prosser and Keeton on Torts, § 75 (5th ed. 1984). A guardian's responsibility under article 2317 constitutes strict liability under these general terms as well as in relation to our law because it is imposed regardless of whether he knew or could have known of the defects in the object of his garde. Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986); Entrevia v. Hood, 427 So.2d 1146 (La.1983); Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982); Fonseca v. Marlin Marine Corp., 410 So.2d 674 (La.1981); Morgan v. Hartford Accident and Indemnity Co., 402 So.2d 640 (La.1981); Jones v. Baton Rouge, 388 So.2d 737 (La.1980); Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980); Loescher v. Parr, 324 So.2d 441 (La.1975). As a matter of fact, it was the increasingly difficult burden encountered by accident victims in attempting to prove negligence or personal fault on the part of those who profited from the inventions of the industrial age that led to the discovery of the principle of strict liability underlying French Civil Code article 1384(1) and its counterparts in Belgium, Quebec and Louisiana. Tunc, A Codified Law of TortThe French Experience, 39 La.L.Rev. 1051, 1068, 1069 + n. 54, 1070 (1979); Verlander, We Are Responsible ..., 2 Tulane Civil Law Forum No. 2, p. 31-34, 43-47 (1974); Tunc, The Twentieth Century Development and Function of the Law of Torts in France, 14 Int'l. + Comp.L.Q. 1089, 1094-95 (1965); Crepeau, Liability for Damage Caused by Things, 40 Can.Bar Rev. 222, 231-33 (1962); Baudouin, Delicts Under the Quebec Civil Code, in Canadian Jurisprudence 169 (ed. McWhinney 1958); Walton, Liability for Damage Done by Inanimate Things, Movable and Immovable, 9 Jurid. Rev. 359, 362-71 (1937); Deak, Automobile Accidents: A Comparative Study of the Law of Liability in Europe, 79 U.Pa.L.Rev. 271, 274-76 (1931); Josserand, De la Responsabilite du Fait des Choses Inanimees 6-8 (1897) republished in von Mehren, supra, at p. 600.
Therefore, a guardian cannot urge his lack of knowledge of defects as a defense *1034 to strict liability under article 2317 although he may be able to raise it successfully as a gratuitous lender to defeat an action against him for negligence or intentional wrong under articles 2909, 2315 and 2316. To allow such a defendant to use an intentional tort or negligence defense to defeat a strict liability right of action would drastically undermine and lead to the complete erosion of the article 2317 principle of strict liability. Although we have deviated from the theory of the case pleading under Code of Civil Procedure articles 854 and 865, the courts must still ascertain the nature of an action in order to determine its essential elements, the available defenses and the applicable prescription. See Langlois v. Allied Chemical Corp., supra, 249 So.2d at p. 136.

6. Quantum
The dissenting judges on the court of appeal concluded that no fault was proven on the plaintiff's part and that the jury was clearly wrong in reducing the plaintiff's recovery by ten percent. We agree. The record discloses absolutely no evidence of negligence on his part.
The plaintiff contends that the jury abused its discretion in the inadequacy of the total damages awarded. From our review of the record, however, we conclude that, although the evidence would support a higher award, the sum awarded was not so unreasonably low as to constitute an abuse of the jury's discretion.

7. Application of the Precepts to this Case
In the present case, the plaintiff proved that the owner of the ladder had the garde or custody of its structure at the time of the accident, that the ladder contained a vice or defect creating an unreasonable risk of harm to others, and that his damage occurred through this defect or vice. The owner-guardians of the defective ladder are therefore strictly liable for maintaining the defective ladder and for their failure to prevent its vice from causing injury, unless they prove that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Because the defendants did not introduce any substantial or convincing evidence in support of these defenses, the plaintiff is entitled to recover fully for his injuries.

Conclusion
For the reasons assigned, we reverse the judgment of the court of appeal and reinstate the district court judgment, and the district court judgment is amended to increase the principal sum awarded to the plaintiff to $100,000 and to award him costs in all courts.
REVERSED; TRIAL COURT JUDGMENT REINSTATED AND AMENDED.
LEMMON, J., concurs.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
La.Civ.Code art. 2317 provides that we are responsible for the damage caused by things which we have "in our custody." In my view, the ladder in the instant case was no longer in the owner's custody. Moreover, La.Civ.Code art. 2909 directly addresses this situation and provides that the lender is answerable to the borrower only if the lender was aware of the defect and did not inform the borrower. The majority's extension of art. 2317 liability has the effect of making art. 2909 meaningless. Accordingly, I respectfully dissent.