525 So.2d 145 (1988)
Clyde R. WHITE, Plaintiff-Appellant,
v.
GULF STATES UTILITIES COMPANY and Otis Elevator Company, Defendants-Appellees,
Employers National Insurance Company, Defendant-Appellant-Intervenor.
No. 87-84.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1988.
*146 Miguez & Leckband, James Miguez and Carl Leckband, Lake Charles, for plaintiff-appellant.
Plauche, Smith & Nieset, A.R. Johnson IV, Lake Charles, for defendant-appellant-intervenor.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Robert W. Clements, Lake Charles, for defendants-appellees.
Before DOMENGEAUX and LABORDE, JJ., and CULPEPPER, J. Pro Tem.[*]
LABORDE, Judge.
Plaintiff, Clyde R. White, brought suit for personal injuries sustained while working in the course and scope of his employment with Bechtel Corporation against Gulf States Utilities and Otis Elevator Company. Employers National Insurance Company intervened to recoup worker's compensation benefits and medical expenses. By summary judgment, Otis Elevator Company was dismissed from suit. The trial court also dismissed Gulf States Utilities by summary judgment but the judgment was reversed by this Court. 465 So.2d 287 (La.App.3d Cir.), writ denied, 468 So.2d 576 (La.1985). On remand, at the conclusion of plaintiff's case in chief, the trial court granted Gulf States Utilities motion for directed verdict. From this judgment plaintiff and Employers National Insurance Company appeal. We affirm.

FACTS
On November 8, 1979, while working as a journeyman ironworker for Bechtel Corp. at the Nelson Power Plant outside of Lake Charles, Louisiana, plaintiff sustained a severe injury to his arm. Plaintiff alleges that at the time of the accident he was preparing to straighten and align a construction elevator tower attached to the exterior of the main boiler building which was under construction.
*147 The elevator is affixed to the south side of the square tower frame. The elevator's counterbalance ran on the north side of the tower frame. Plaintiff was waiting for instructions in the interior of the tower frame at the time of the accident. The elevator began its ascent; concurrently, the counterbalance began its descent upon plaintiff's arm. Plaintiff's arm became lodged between the counterbalance and the tower frame itself. The arm was severely injured.
Plaintiff's action against Gulf States Utilities is based upon its alleged failure to properly inspect, maintain, repair, and supervise the operation of the elevator. Plaintiff alleges that the elevator was unsafe because it was not equipped with any warning device designed to alert people working on the tower of the elevator's operation. Plaintiff seeks to have Gulf States Utilities held liable under strict liability (La.C.C. art. 2317 & 2322) as the owner of a defective immovable; and under negligence (La.C.C. art. 2315) as the supervisor of the construction elevator.
Plaintiff apparently abandons his argument under La.C.C. art. 2315 on appeal as no mention is made of it. In an abundance of caution, however, the issue will be discussed. Further, we must determine whether the construction elevator is an immovable for the purposes of strict liability.

STANDARD FOR DIRECTED VERDICTS
Directed verdicts facilitate judicial efficiency by allowing the trial judge to conclude the litigation in a jury trial if the facts and inferences are so overwhelmingly in favor of the moving party that the trial court believes that reasonable men could not arrive at a contrary verdict. Campbell v. Mouton, 373 So.2d 237, 238 (La.App.3d Cir.1979). Louisiana trial courts have authority to grant directed verdicts under La. C.C.P. art. 1810:
"A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury."
Article 1810 does not provide a standard for the trial court to employ in determining a party's right to a directed verdict. Louisiana courts have adopted the standard succinctly stated in Boeing Company v. Shipman, 411 F.2d 365 (5th Cir.1969):
"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."
See Breithaupt v. Sellers, 390 So.2d 870 (La.1980); Roberts v. St. Bernard Parish School Board, 427 So.2d 676 (La.App. 4th Cir.1983); Campbell, 373 So.2d at 239.
After reviewing plaintiff's evidence in the light most favorable to him, and drawing all reasonable inferences most favorable to his position, we conclude that defendant's motion for directed verdict was judiciously granted.

LIABILITY UNDER CIVIL CODE ARTICLE 2315
Plaintiff asserts that Gulf States Utilities is liable for the accident in the elevator tower because the Company had exercised *148 supervision over the elevator. At trial, however, this assertion was put to rest.
Mr. Wilbert Demarie, a former co-worker of plaintiff and ironworker-steward at the power plant project, testified that he never had any contact with Gulf States people. No Gulf States employees supervised his workfrom the time he unloaded the construction elevator until the time he retired from the project. Further Mr. Demarie stated that Bechtel operated the elevator. Mr. Demarie noted that Gulf States employees visited the job site to observe the quality of work.
The general foreman of Bechtel's ironworkers group, Mr. Norman Hebert, testified that Gulf States employees did not supervise or direct any work, but that they would observe the work to insure that it was in compliance with the contract.
Plaintiff, Mr. White, failed to mention even one occasion where Gulf States directed or supervised the operation of the project, let alone the elevator. Further, plaintiff ignores the theory in his brief.
From the testimony presented, we have no hesitancy in concluding that Gulf States had no supervisory duty over plaintiff, over the elevator, or over the project in general. The trial court's directed verdict as to La.C.C. art. 2315 was appropriate.

LIABILITY UNDER CIVIL CODE ARTICLE 2317
Plaintiff argues that as property owner, Gulf States had custody over the defective elevator which caused plaintiff's injuries. Thus, plaintiff asserts, Gulf States is liable for plaintiff's damages under the strict liability theory codified in La.C.C. art. 2317.
For recovery under Article 2317, plaintiff must prove:
1) That the thing which caused the injury was in the care or custody of the defendant;
2) That a vice or defect existed in the thing; and
3) That the vice or defect caused the injury.
See Loescher v. Parr, 324 So.2d 441 (La. 1975); Goudchaux v. State Farm Fire & Casualty Company, 407 So.2d 1317 (La. App. 3d Cir.1981), writ denied, 412 So.2d 1114 (La.1982).
Plaintiff fails to establish the first element of proofcustody over the elevator. The record is clear that Bechtel initially, continuously, and finally maintained full control over the assembly and operation of the utility elevator. The record does not even intimate that Gulf States had custody over the elevator. For this reason, we find Wilhite v. Foster Wheeler Energy Corp., 517 So.2d 1164 (La.App. 3d Cir.1987), factually inapposite. Because the uncontested facts show that the custody (garde) of the elevator was never transferred from Bechtel Corporation to Gulf States, the trial court correctly directed the verdict in favor of defendant on this issue.

LIABILITY UNDER CIVIL CODE ARTICLE 2322
Plaintiff relies on the provisions of La.C. C. art. 2322 which imposes liability upon the owner of a building to persons injured through its ruin, whether due to a vice in its original construction or through the owner's neglect to repair it.
The Louisiana Supreme Court in Entrevia v. Hood, 427 So.2d 1146, 1148 (La.1983), commented that Article 2322 further defines the application of Article 2317's general principle to the owner of the building: The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction. Thereafter, the Court discussed the identity of the legal principle of legal fault which underlie both 2317 and 2322 as enunciated in Loescher v. Parr, 324 So.2d 441, 446-47 (La.1976):
"When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no *149 personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others. The fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others.
This jurisprudence recognized that the injured person must prove the vice (i.e., unreasonable risk of injury to another) in the person or thing whose act causes the damage, and that the damage resulted from this vice. Once this is proved, the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force.
The legal fault thus arising from our code provisions has sometimes been referred to as strict liability."
Entrevia, 427 So.2d at 1148.
The owner of a building has a nondelegable duty to keep his building and its necessary appurtenances in repair so as to avoid unreasonable risk of injury to others. Olsen v. Shell Oil Co., 365 So.2d 1285, 1292 (La.1979).
To recover under Article 2317 or 2322 against the owner of a building, the injured party must prove that the building posed an unreasonable risk of injury to others, and that his damage occurred through this risk. The owner is responsible for the damages unless he proves that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. See Entrevia, 427 So.2d at 1148.
Thus, in order to avoid the trial court's directed verdict, plaintiff must have proved that:
1) there is a building;
2) the defendant is the owner of the building; and
3) there must be a "ruin" caused by a vice in construction or a neglect to repair, which occasions the damage sought to be recovered.
Charpentier v. St. Martin Parish School Board, 411 So.2d 717 (La.App. 3d Cir.1982).
Plaintiff stresses that the utility elevator was attached to the boiler building under construction (by welded struts) and incorporated into the ground (by a concrete slab and bolts). Plaintiff argues, therefore, that the elevator is an appurtenance or attachment to the building and is thus encompassed by La.C.C. art. 2322.
Defendant argues that the elevator was not a necessary appurtenance at all, but an apparatus used by the contractors in performing that construction, never intended as a permanent part of the building for whose original construction vices the Civil Code holds the owner of the building liable. See Fonseca v. Marlin Marine Corp., 410 So.2d 674, 683 (La.1981).
We agree with defendant's position for two reasons: First, the record shows that Bechtel owned, operated, then dismantled the utility elevator after the equipment was no longer required. It was transitorily attached to the building. The equipment was never intended to be permanently attached to the building or to become an integral part thereof. The elevator was removed with no indication of "substantial damage" to itself or to the immovable to which it was attached. See La.C.C. arts. 465 and 466; Willis v. Cajun Elec. Power Co-op., Inc., 484 So.2d 726 (La.App. 1st Cir.), writ denied, 488 So.2d 200 (La. 1986). Second, as we appreciate the interpreter's duty to decide which risks are encompassed by the codal obligations from *150 the standpoint of justice and social utility,[1] we find that plaintiff failed to present a prima facia case to establish that an unreasonable risk of harm existed. Plaintiff admitted at trial that the noise produced by the elevator in movement could be readily detected. A warning bell or horn would at best be redundant for workers positioned as plaintiff waswithin the elevator tower. We find that plaintiff utterly failed in proving the elements necessary to hold the owner liable under La.C.C. art. 2322. No reasonable man could have found otherwise; therefore, the trial court's directed verdict was appropriate.
For the above and foregoing reasons, judgment of the trial court is affirmed. Plaintiff and Employers National Insurance Company are taxed equally for the costs of this appeal.
AFFIRMED.
NOTES
[*] Hon. William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] See Entrevia, 427 So.2d at 1149, quoted in pertinent part below:

"The requirement that an injured person in order to recover under Article 2317 or 2322 must prove that the risk from which his damage resulted posed an unreasonable risk of harm places a limitation on a building owner's strict liability. He cannot be held responsible for all injuries resulting from any risk posed by his building, only those caused by an unreasonable risk of harm to others.
The unreasonable risk of harm criterion, however, is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed by this court to symbolize the judicial process required by the civil code. Since Articles 2317 and 2322 state general precepts and not detailed rules for all concrete cases, it becomes the interpreter's duty to decide which risks are encompassed by the codal obligations from the standpoint of justice and social utility. Geny, Method of Interpretation and Sources of Private Positive Law § 174 (Louisiana State Law Institute trans. 2d ed. 1963). To recognize the necessity for this process and to give directions for the judge's consideration of the facts and their relation to the ideals of justice and social utility, this court has said that the owner of a building which presents an unreasonable risk of harm to others shall be responsible to a person injured by realization of that risk unless the victim's damage was caused by the fault of the victim, the fault of a third person, or an irresistible force. These conceptions only provide approaches to the decision of concrete cases, however, and the interpreter must be wary of the illusion that he can find a ready solution in their revelations. Except in the clearest of cases, it is necessary for the judge, in shaping his decision about how the law applies to the facts, to consider the particular situation from the same standpoint as would a legislator regulating the matter. Geny, supra, §§ 173-174; Cf. Id. at § 170. See also Dixon, Judicial Method in Interpretation of Law in Louisiana, 42 La. LJRev. 1661, 1678 (1983); J. Cuetc-Rua, Judicial Method of Interpretation of the Law 277 (1981). As this court has noted in relation to other forms of strict liability under the civil code, the activities of man for which he may be liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations. Langlois v. Allied Chemical Corporation, 258 La. 1067, 1084, 249 So.2d 133, 140 (1971)."