569 So.2d 23 (1990)
Robert DAVENPORT
v.
AMAX NICKEL, INC., et al.
No. 90-CA-0289.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1990.
Writ Denied January 4, 1991.
*25 Jeffrey M. Boudreaux, Weigand, Weigand & Meyer, Houma, for plaintiff/appellant.
Brian J. Waid, Bubrig and Waid, Buras, for MAB Intern., Inc., defendant/appellant.
Joseph B. Guilbeau, Dean A. Sutherland, Sutherland, Juge, Horack & Dwyer, New Orleans, for defendants/appellees.
Before GARRISON, BARRY and CIACCIO, JJ.
BARRY, Judge.
Robert Davenport, a welder, was injured when scaffolding collapsed at the Amax Nickel plant in Braithwaite. Davenport sued Amax and John Buckhannon, an Amax supervisor, alleging negligence, and Amax based on strict liability. Amax filed a third party claim against the contractor, MAB International, Inc., based on an indemnification contract. MAB filed an exception of no cause of action, claiming that indemnification would not accrue unless Amax was found liable to Davenport. The trial court granted Amax's and Buckhannon's motion for summary judgment and did not rule on MAB's exception of no cause of action. Davenport appeals the dismissal of his suit. MAB acknowledges that its exception is moot if this Court affirms the summary judgment which dismisses Amax and Buckhannon; but MAB argues that its exception should be granted if this Court reverses the summary judgment.

FACTS
Davenport was injured while working on the conversion of the Amax plant from a nickel refinery to a metal recovery facility. Three puristat tanks were being installed at the plant. A puristat is a large conical vessel 35 to 40 feet in height supported by eight legs which join the tank approximately 20 feet from the ground.
In March, 1986 Amax retained MAB, an independent contractor, to design, fabricate, ship and install the puristats in final working condition within a specified time period. Amax was to supply access to water and power and a crane to lift the vessels into place. MAB entered into an oral agreement with George Bezmalinovic, owner and operator of Bez, Inc., whereby Bez would erect and install the puristat vessels and provide all necessary labor.
The Amax contract required MAB and its subcontractors to comply with OSHA regulations and Amax safety rules. Amax held safety indoctrination classes for MAB and Bez employees who were to enforce the safety regulations.
In order to weld the vessels into place, scaffolding was built around each tank at approximately 20 feet from the ground. J.D. Ewing, Bez foreman, designed the scaffolding and supervised its construction. *26 The scaffolding was constructed by welding angle irons at right angles to the tank. A second angle iron was welded to the tank and to the outer end of the first angle iron, bracing it at a 45 degree angle. That design is referred to as a triangle brace. Boards were laid between the triangle braces and tied on with ropes to form the scaffolding. Ewing testified that the triangle braces were welded on three sides at all joints. He inspected the welds on the braces and performed most of the welding. That type of scaffolding is a common design which complies with OSHA regulations. After the scaffolding was completed, it was discovered that the boards supplied by MAB were too flexible and welders standing on the boards were not able to obtain good welds. The original boards were replaced with rigid boards from the Amax storeroom. Amax did not have a contractual right or obligation to inspect the scaffolding, and never did so.
Amax had no safety rules regarding scaffolding construction. Amax's safety rules require the use of a safety belt any time a worker is more than eight feet off the ground. Workers must wear proper equipment in the work area, i.e., hard-toed shoes, hard hats, long sleeves and safety glasses. All workers entering the plant were required to go through a safety inspection and were not allowed into the work area without appropriate safety equipment. Amax supplied equipment such as safety glasses and hard hats when workmen reported without the equipment.
MAB frequently did not have an on-site representative although Ewing was at the plant every day. As Bez's foreman, Ewing was responsible for ensuring that all Bez employees complied with the safety rules. The regular procedure was for Amax personnel to inspect the job and contact MAB's office in Houston if changes were desired. Occasionally an Amax supervisor spoke with Ewing if there was a safety violation or design problem. Amax personnel insisted that Bez welders use safety belts.
On the day of the accident Davenport was welding on the inside of a tank leg. To reach that area from the regular scaffolding it was necessary to stretch around to the inside of the leg. The other welders were able to accomplish that while standing on the regular scaffolding. Davenport decided it would be easier to make the interior leg welds if he stood on a small scaffold made of boards placed on single angle irons welded to the inside of the tank leg. He fell when a weld holding the angle irons broke, causing this scaffold to collapse. Davenport's safety belt was on but was not hooked to the tank. The belt might have been attached to the scaffold which collapsed.
An examination revealed that the angle iron which broke had not been braced or properly welded to the leg; instead it was merely "tack" or "spot" welded. A tack weld is a temporary join used by welders to hold pieces of metal in place until permanent welds are made. It is not intended to support a man's weight.
All parties agree that the angle iron which broke off had been tack welded to the tank leg by a Bez employee.

VALIDITY OF JUDGMENT ON APPEAL
We note a matter not addressed by the parties. The trial judge substantively amended the original judgment without a motion for new trial. The original judgment (November 13, 1989) granted summary judgment in favor of Amax Nickel, Inc. but did not include defendant John Buckhannon. On November 17, 1989 an amended judgment dismissed the suit against Buckhannon. On November 30, 1989 Davenport appealed both the November 13 and the November 17 judgments.
La.C.C.P.Art. 1951 provides:
A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation.
The addition of a party to a judgment is a change of substance and not of phraseology *27 which can only be accomplished by motion for a new trial or on appeal. Teague v. Barnes, 519 So.2d 817 (La.App. 5th Cir.1988). The usual remedy of the appellate court is to vacate the amended judgment and reinstate the original judgment. Teague, supra. Schexnayder v. Schexnayder, 503 So.2d 104 (La.App. 5th Cir. 1987).
La.C.C.P.Art. 2164 permits an appellate court to "render any judgment which is just, legal and proper upon the record on appeal." Here, although the parties neither moved for a new trial nor questioned the amended judgment in this Court, plaintiff appealed both judgments.
The record is complete and we deem it just and proper to vacate the amended judgment and reinstate the original judgment, and to amend the original judgment to include summary judgment in favor of defendant John Buckhannon.

STANDARD FOR SUMMARY JUDGMENT
The purpose of a summary judgment motion is to determine prior to trial whether a genuine issue of material fact is in dispute. Industrial Sand and Abrasives v. Louisville & Nashville Railroad Co., 427 So.2d 1152 (La.1983). A party may move for summary judgment at any time. The motion should be granted "if the pleadings, depositions, answers to interrogoratories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La.C.C.P.Art. 966; Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La. 1980); Ricker v. Wieleman, 464 So.2d 891 (La.App. 4th Cir.1985). Summary judgment is warranted only when reasonable minds must inevitably conclude that on the facts before the court the mover is entitled to summary judgment as a matter of law. Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976); Ricker, supra. The burden is on the mover to show that there is no genuine issue of material fact in dispute. Any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the mover. Industrial Sand and Abrasives, supra; Ricker, supra.
The pleadings, affidavits, and documents of the mover must be scrutinized closely, while those of the opponent to the motion are to be treated indulgently. The mover must meet a strict standard of showing that the truth is clear and that any real doubt as to the existence of a genuine issue of material fact has been excluded. Industrial Sand and Abrasives, supra; Vermilion Corp. v. Vaughn, 397 So.2d 490 (La. 1981).
Nevertheless, despite the presence of disputed facts, summary judgment will be granted as a matter of law if the contested facts present no legal issues. Allegations without substance will not preclude summary judgment. Jones v. City of Kenner, 442 So.2d 1242 (La.App. 5th Cir.1983). Metropolitan Bank of Jefferson v. Summers, 257 So.2d 179 (La.App. 4th Cir.1972), writ refused, 261 La. 462, 259 So.2d 914 (1972).

LIABILITY OF OWNER FOR INDEPENDENT CONTRACTOR'S NEGLIGENCE
As a general rule, property owners are not liable for the negligence of an independent contractor. Factors relevant to the determination of an independent contractor relationship include the independent nature of the contractor's business, the existence of a contract to perform a specific job for a fixed price, performance of the work by the contractor's employees, the furnishing of necessary tools and materials by the contractor and his right to control the conduct of his work while in progress. Williams v. Gervais F. Favrot Company, 499 So.2d 623 (La.App. 4th Cir.1986), writ denied, 503 So.2d 19 (La.1987). The most important factor is the degree of control which the owner can exercise over the contractor's performance. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972). Where a contractor is contractually obligated to perform a specified job within a certain time for a set price and may use nonexclusive *28 means to perform his work, an independent contractor relationship exists and the owner is not vicariously liable for the contractor's negligence. Hickman, supra; Williams, supra; Arledge v. Royal-Globe Insurance Company, 401 So.2d 615 (La. App. 3rd Cir.1981); Crutti v. Frank, 146 So.2d 474 (La.App. 4th Cir.1962).
There are two exceptions to the general rule of nonliability: (1) an owner may not avoid liability for inherently or intrinsically dangerous work by an independent contractor; (2) an owner may be liable for exercising control over the contractor's methods of operation or giving express or implied authorization to an unsafe practice. Williams, supra; Ewell v. Petro Processors of La., Inc., 364 So.2d 604 (La.App. 1st Cir.1978), writ denied, 366 So.2d 575 (La.1979). Davenport argues that Amax is liable under one or both of these exceptions.
The critical inquiry in determining whether an activity is inherently or intrinsically dangerous is whether it can be made safe when performed in a proper and workmanlike manner. Guillory v. Conoco Inc., 521 So.2d 1220 (La.App. 3rd Cir.1988), writ denied, 526 So.2d 801 (La.1988); Smith v. Crown Zellerbach Corp., 486 So.2d 798 (La.App. 1st Cir.1986), writ denied, 489 So.2d 246 (La.1986). Construction or assembly work is not an intrinsically or inherently dangerous activity. Guillory, supra; Williams, supra. In this case, Davenport was not injured performing an inherently dangerous job; rather, the accident resulted from the collapse of an unsafe scaffold brace and his failure to hook his safety belt to the tank.
Davenport argues that Amax exercised control over the operations of Bez, Inc. and expressly or impliedly authorized its unsafe practices.
A contractual clause requiring a contractor to comply with the owner's safety rules does not signify the requisite right of operational control necessary to vitiate the independent contractor relationship. Triplette v. Exxon Corp., 554 So.2d 1361 (La.App. 1st Cir.1989); Guillory, supra. Amax monitored the job, but its personnel did not directly supervise the day to day details of the work. The fact that Amax personnel periodically inspected the job to ensure that the work was performed according to contract specifications does not constitute the exercise of operational control and render Amax or Buckhannon liable for the negligence of MAB or Bez. Guillory, supra; Williams, supra. The fact that Amax personnel may have pointed out obvious violations of safety rules and may have sought to have them corrected does not make Amax liable for the consequences of such violations. Imposing liability based on that theory could lead to the absurd result of encouraging owners to ignore and condone safety violations by independent contractors in order to avoid liability. Under these circumstances we find that Amax is not liable.
Davenport suggests that Amax may have had a direct duty to ensure that he was provided with adequate fall protection. He cites the imposition of a deadline for completion of the work and the fact that MAB was not contractually required to furnish an on the job supervisor to monitor its subcontractor's activities as factors giving rise to such a duty.
We are not aware of a Louisiana statute or jurisprudence which imposes a duty under these circumstances.

STRICT LIABILITY UNDER ARTICLE 2317
Davenport urges that Amax, as owner of the plant, had custody over the defective scaffolding and is strictly liable under C.C. Art. 2317.
In order to recover under Art. 2317 a plaintiff need not establish negligence but must show:
(1) that the thing that caused the injury was in the care or custody of the defendant;
(2) the thing had a vice or defect; and
(3) the vice or defect caused the injury.
Loescher v. Parr, 324 So.2d 441 (La.1975). White v. Gulf States Utilities Co., 525 So.2d 145 (La.App. 3rd Cir.1988).
*29 Davenport failed to establish that Amax had custody of the scaffolding. The record shows that Bez designed, erected and maintained continuous control over the scaffolding. The fact that the scaffolding was on Amax's premises does not constitute custody. LeBlanc v. Hullinghorst Industries, Inc., 542 So.2d 642 (La.App. 5th Cir.1989), writ not considered, 544 So.2d 412 (1989); White, supra.
The trial judge properly granted summary judgment on that issue.

STRICT LIABILITY UNDER ARTICLE 2322
Davenport submits that Amax is liable under the strict liability provisions of La.C.C.Art. 2322. To recover under Art. 2322 a plaintiff must prove that his injury was caused by the ruin of a building owned by defendant and that the ruin was attributable to a vice in the building's construction or a failure to repair it. Fonseca v. Marlin Marine Corp., 410 So.2d 674 (La. 1981); White, supra.
Assuming that a puristat tank is a "building" under La.C.C.Art. 2322 and that Amax owns the scaffolding, we nevertheless find that Art. 2322 is not applicable. The scaffolding was transitorily attached to the tank for construction purposes and was never intended to be an integral part of or to remain permanently attached to the tank. As a matter of law the scaffolding did not become a component of the "building" and does not fall under Art. 2322. La.C.C.Arts. 465 and 466. Fonseca, supra; White, supra; Willis v. Cajun Electric Power Cooperative, Inc., 484 So.2d 726 (La.App. 1st Cir.1986), writ denied, 488 So.2d 200 (La.1986).

EXCEPTION OF NO CAUSE OF ACTION
Because we find that the trial court was correct in granting summary judgment in favor of Amax and Buckhannon, it is not necessary to consider the exception of no cause of action raised by MAB in response to Amax's third party demand.
The amended judgment of November 17, 1989 is vacated. The judgment of November 13, 1989 is reinstated, amended and affirmed as follows:
IT IS ORDERED, ADJUDGED AND DECREED that summary judgment be granted in favor of Amax Nickel, Inc. and John Buckhannon. Robert Davenport's petition against Amax Nickel, Inc. and John Buckhannon is dismissed at plaintiff's cost.
JUDGMENT OF NOVEMBER 17, 1989, VACATED; JUDGMENT OF NOVEMBER 13, 1989, REINSTATED, AMENDED AND AFFIRMED.