| WALTZER, Judge,
dissenting.
I respectfully dissent. The record contains no evidence that Alexander paid for the erection of the scaffold or the material used to build it. The only contract in evidence between Alexander and one of the three general contractors states that the contractor is responsible for any scaffold. This contract is the one between Alexander and Dave Terrick, the final general contractor, who was the contractor at the time Olivier was injured.
The Oliviers argue that Alexander became the owner of the scaffold after he fired the first general contractor who abandoned the scaffold when he didn’t remove it. LSA-C.C. art. 3418 provides, “One who takes possession of an abandoned thing with the intent to own it acquires ownership by occupancy. A thing is abandoned when its owner relinquishes possession with the intent to give up ownership.” (Emphasis added.) The Oliviers offered no evidence that Alexander intended to own the scaffold. Moreover, the record contains little evidence that Alexander was in possession of the scaffold. “Possession is the detention or enjoyment of a thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name.” LSA-C.C. art. 3421. Alexander knew it remained on the site, but he exercised no | ¡.control over the scaffold. The evidence in the record establishes that Alexander intended the general contractor to assume responsibility for the scaffold. Thus, even though the two subsequent contractors used the scaffold erected by the first contractor, they did not possess in Alexander’s name under the terms of the contract. Therefore, assuming the scaffold was abandoned property, the record does not establish that Alexander acquired ownership by possession with the intent to own.
The Oliviers rely heavily on a decision of the Louisiana Supreme Court, holding that “An owner who transfers possession of his thing having a structural defect to another *778 continues to have the garde or custody of its structure and a duty to protect others from harm caused by the defect.” Ross v. La Coste de Monterville, 502 So.2d 1026, 1029 (La.1987). In Ross, a gratuitous lender who was also the owner of a defective stepladder was found by the trial court to be the custodian of the ladder, even though the owner/lender loaned plaintiff the ladder and was not its possessor at the time of the accident. The Supreme Court agreed with these determinations. This holding is distinguishable from the Oliviers’ situation, since the evidence does not establish that Alexander owned the scaffold or gratuitously loaned it to the independent contractors.
Other parties removed the scaffold from defendant’s property when the construction job was complete. Plaintiffs introduced no evidence that defendant was billed for either the materials used to construct the scaffold or the labor. The trial court did not conclude that defendant owned the scaffold, and we are not persuaded that the record permits such a conclusion.
After reviewing the entire record, I find that plaintiffs have not proved defendant’s ownership. I view this case as one involving a piece of equipment owned by an independent contractor who is engaged by the defendant to work on defendant’s property and who used the equipment on the job. Therefore, plaintiffs were obliged to prove ^defendant’s custody of the scaffold, considering both the benefits derived from it by defendant and his right to control or direct its use.
The evidence in the record does not support a conclusion that Alexander either derived any real benefit from the scaffold or had any control over it. The scaffold was erected early in the project and was used by various employees of the contractors engaged by the defendant. Defendant visited the construction site frequently to determine the progress of the project. Constructing an apartment building, he intended to rent the four apartments for profit. In other words, defendant was not building his home or personal residence. Furthermore, the scaffold was not essential to the project, since many tasks were completed without it. Specifically, plaintiff had used a ladder generally to perform his work. Plaintiff fell after his first step onto the scaffold. Photographs of the “scaffold” evidence either a scaffold in progress or an incomplete structure.
Although defendant testified he saw the scaffold when he viewed the construction site -for progress, there is no evidence for what purpose the scaffold was built or for what purpose it was used. Moreover, plaintiff testified that he saw no one use the structure and that no one told him to use it. Thus, although defendant derived some benefit from the scaffold, it was both insubstantial and indirect.
Plaintiffs allege that defendant had the requisite degree of direction and control over the scaffold. However, the record reveals little if any evidence of any right of defendant to direct or control the scaffold. Defendant neither built the scaffold nor dismantled it. Defendant hired a general contractor for the construction project. Actually, defendant hired three different general contractors to oversee construction. The trial court concluded that defendant “visited the job |4on a weekly basis, provided plumbers and electricians for the job, signed off on acceptance of the work and approved and [sic] the hiring and firing of contractors.” I find no error with these factual determinations, but I do not believe these facts necessitate a conclusion that defendant had any degree of control or direction over the scaffold. Defendant responded in his deposition that if he noticed any safety concerns, he believed he had the right to correct them by reporting them to his lender. Defendant also testified that he complained about the scaffold, but the scaffolding remained on the site long after his complaints. Defendant did not decide when it was ultimately removed.
*779 Plaintiffs introduced a contract between defendant, the lender (the Association), and the third contractor, Dave Terrick. Plaintiffs rely on the contract provision, stating that the “Association is not a supervisor or a protector of individual rights and, accordingly, assumes no liability whatsoever to anyone, in contract, or in tort.” Defendant relies on another provision of the contract, declaring that “the Contractor agrees to work, contract or subcontract, and generally perform, or cause to be performed, all of the work necessary to be done, to the satisfaction of and under the direction of the Building Expert of the Association, named above, and his decision shall be final.” The contract further provides that the “Contractor is to furnish all labor, tools, materials, appliances, scaffolding and cartage of every description necessary ...” (Emphasis supplied.) I do not believe that this contract is determinative of the issue whether defendant had custody of the scaffold, but I do believe it is indicative of the parties’ intent regarding such equipment. The contract evidences that the contractor was completely responsible for the scaffold at the construction site. Even though defendant “was visible and intimately involved in the construction project,” plaintiffs failed to prove defendant had any control over or direction of the scaffold.
| [¡Therefore, plaintiffs did not offer any evidence establishing a relationship between the defendant and the scaffold. Although defendant “visited the job on a weekly basis, provided plumbers and electricians for the job, signed off on acceptance of the work and approved and [sic] the hiring and firing of contractors,” the record does not evidence any right of the defendant to control and direct the scaffold or to derive any substantial benefit from its use. Accordingly, I conclude that plaintiffs did not prove that defendant had custody of the construction scaffold and that the trial court’s conclusion was clearly wrong.
An owner may be liable for exercising control over the contractor’s methods of operation or giving express or implied authorization to an unsafe practice. Davenport v. Amax Nickel, Inc. 569 So.2d 23, 28 (La.App. 4 Cir.1990), writ denied 572 So.2d 68 (La.1991). In Davenport, this court specifically found that “Amax monitored the job, but its personnel did not directly supervise the day to day details of the work. The fact that Amax personnel periodically inspected the job to insure that the work was performed according to contract specifications does not constitute the exercise of operational control.” Furthermore, this court explained,
The fact that Amax personnel may have pointed out obvious violations of safety rules and may have sought to have them corrected does not make Amax liable for the consequences of such violations. Imposing liability based on that theory could lead to the absurd result of encouraging owners to ignore and condone safety violations by independent contractors in order to avoid liability.
In this suit, the trial court found that Alexander “visited the job on a weekly basis, provided plumbers and electricians for the job, signed off on acceptances of the work and approved and [sic] the hiring and firing of contractors.” The record supports these factual conclusions, but these actions do not render Alexander liable for the actions of the independent contractors. The record contains no evidence
|fithat Alexander supervised the details of the work of the contractors. Moreover, Alexander admitted seeing the scaffold, but this fact alone does not render him liable for the independent contractors’ negligence.
The appropriate inquiry is whether Alexander impliedly assented to the unsafe condition, use of the scaffold. Even though knowledge is not a consideration in imposing strict liability, we must consider Alexander’s knowledge of the alleged defective condition. Ross, supra at 1033. *780 Furthermore, the policy considered by this court in Davenport seems applicable in this matter, supra at 29. Other than a general awareness of the scaffold by Alexander, there is no evidence that he knew the scaffold was defective or that he knew the laborers used the scaffold. Thus, I find that the trial court clearly erred when it concluded that Alexander’s actions in overseeing the construction project rendered him strictly hable for any negligence of the absent independent contractors who constructed and used the defective scaffold.
Plaintiffs argue for strict liability pursuant to LSA-C.C. art. 2322. This article imposes strict liability upon “the owner of a building”. As discussed above, the record evidence shows, more probably than not, that defendant did not own the scaffold. However, plaintiffs argue that the scaffold is a part of the “building” which defendant owned. I find that LSA-C.C. art. 2322 is inapplicable. The scaffold was “transitorily attached” to the building for construction purposes only and “was never intended to be an integral part of or to remain permanently attached to” the apartment building, regardless of the length of time it stood. Davenport, supra at 29. Plaintiffs offered no evidence that the scaffold was a permanent attachment to the defendant’s building. I conclude that the construction scaffold was not a part of this building and that defendant is not strictly liable to plaintiffs for their damages, under LSA-C.C. art. 2322.
17Plaintiffs argue that defendant assumed a supervisory duty over the scaffold and thus he was responsible when it collapsed under Donald Olivier. White v. Gulf States Utilities Co., 525 So.2d 145, 147-48 (La.App. 3 Cir.1988). At trial, plaintiffs did not prove such a duty.
Defendant explained that he often visited the construction site to determine the progress of the job, and he admitted he saw the scaffolding before plaintiffs accident. Moreover, defendant related that he inquired when the scaffolding would be removed because he wanted to be assured that the job would soon be complete and he recognized that removal of the scaffold signaled its completion. However, as discussed above, defendant neither controlled the construction of the scaffold or its removal nor inspected it. Workers who were not his employees used the scaffold. Furthermore, Alexander did not supervise any work at the construction site, especially work from the scaffold.
Although plaintiffs offered numerous exhibits proving that defendant was “intimately involved in the construction project,” this evidence does not establish or allow this court to reasonably infer that the defendant assumed such a duty. Plaintiffs failed to prove that defendant had assumed a duty to supervise the work performed for the “construction project.” Thus, the defendant had no supervisory duty over Donald Olivier, the scaffold or the construction project.
For the reasons discussed above, I would reverse the judgment of the trial court holding that Alexander had garde of the scaffold after finding that the Oliviers failed to prove defendant had custody of the construction scaffold and concluding that defendant was not strictly liable to plaintiff for his damages under LSA-C.C. art. 2317. After finding that plaintiffs did not prove that the scaffold was both an integral part of the defendant’s building and a permanent attachment, I conclude that the defendant was not strictly liable under LSA-C.C. art. 2322. |sFinally, I find that the evidence in the record did not establish that defendant had assumed a duty to supervise the work at the construction site, especially the work from the scaffold. Therefore, I respectfully dissent.